**PERRY AND WALLIS, INC.**
v.
**The UNITED STATES.**
No. 365–68.

United States Court of Claims.
June 12, 1970.

States, 141 Ct.Cl. 486 (1958), which was expressly overruled in Zeiger v. United States, 295 F.2d at 917, 155 Ct.Cl. at 357.

---

Paul T. O'Grady, Washington, D. C., for plaintiff. Samuel J. L'Hommedieu, Jr., Washington, D. C., attorney of record.

Steven L. Cohen, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, S K E L T O N, and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge.

In March 1965, plaintiff, Perry and Wallis, Inc., entered into a contract as contractor with the National Park Service, a division of the Department of the Interior, for the construction of guard houses, fences, and sidewalks at the White House in Washington, D. C. In August 1966, Change Order No. 2 was issued, calling for design changes in the fence and guard booths in front of the White House. Plaintiff commissioned a subcontractor to perform the changes. The contracting officer determined that plaintiff's equitable adjustment, under the changes provisions of the contract, was limited to the actual cost *to the subcontractor* of labor, material and supplies expended on the project, plus 15 percent of this base cost as plaintiff's fixed fee.

Plaintiff appealed the contracting officer's determination to the Interior Board of Contract Appeals (IBCA), claiming that the base cost formula should have included 10 percent for the subcontractor's overhead plus 10 percent for the subcontractor's profits. Plaintiff then sought 15 percent of this increased base cost as his fixed fee. The IBCA denied plaintiff's claim in Appeal No. IBCA 617–1–67, 68–2 BCA ¶7116. The case is now before us on cross-motions for summary judgment. Plaintiff is asking this court to reverse the IBCA decision; in the alternative it alleges a breach of contract. We have concluded that the decision of the Board is entitled to finality, and that plaintiff's breach of contract argument is without merit.

The relevant contract provision is found in clause 6(a) (2) of the General Provisions:

6. CHANGES:

(a) Additional Costs. In conformance with Clause 3, 4 and 10 of the General provisions the cost of any change ordered in writing by the Contracting Officer which results in an increase in the contract price will be determined by one or the other of the following methods, at the election of the Contracting Officer:

(1) * * * [Not applicable.]

(2) On the basis of the *actual necessary cost* as determined by the Contracting Officer, plus a fixed fee to cover general supervisory and office expense and profit. The fixed fee shall not exceed 15 percent of the *actual necessary costs.* The actual necessary cost will include all reasonable expenditures for material, labor, and supplies furnished by the Contractor * * * but will *in no case* include any allowance for general superintendent, office expense, or *other general expense not directly attributable to the extra work.* * * * [Emphasis supplied.]

Plaintiff says a plain reading of this cited provision leads to the conclusion that "actual necessary cost" means the actual and necessary cost to the contractor. This interpretation would include the subcontractor's overhead and profits as a part of the base cost. We disagree. This contract specifically defines "actual necessary cost" as including "all reasonable expenditures for material, labor, and supplies," and then goes on to say that *in no case* will actual and necessary costs include an allowance for any "general expense not directly attributable to the extra work." We read this provision as plainly and directly refuting plaintiff's proffered interpretation. The term "actual necessary cost" is narrowed down to exclude any and all expenses not directly attributable to the extra work. This is a clear expression of the government's intention to limit the base cost formula so as to exclude what plaintiff is now seeking.

We take note of three prior cases decided by the IBCA which reach this same conclusion. These are Samkal Mines, Inc., IBCA No. 582–8–66, 66–2 BCA ¶6010; Seal & Co., IBCA No. 181, 61–1 BCA ¶2887; and Irvin Prickett & Sons, IBCA No. 203, 60–2 BCA ¶2747. Although these decisions are not those of

a court, we refer to them to show the interpretation of the IBCA of contract terms identical to and similar to those in the instant case. *Samkal* involved the same phrase as is now before us, and the Board read it as we do. *Prickett* and *Seal* involved similar clauses, and the Board held in each case that the subcontractor's profit and overhead could not be included in the base cost formula.

■ We are especially cognizant and take note of the fact that in *Seal* the Department of Interior was, as here, the agency of the government involved and our present plaintiff was the subcontractor of the complaining contractor in the case. The clause in the *Seal* contract provided that the base cost formula be computed "on the basis of the actual cost of the extra work (* * * excluding overhead), plus fifteen (15) percent of that cost to cover profit and all indirect charges against such extra work." There is no meaningful distinction between this cited clause and the clause in the Perry & Wallis contract. And in *Seal*, the complaining contractor was trying to do the exact same thing that our present plaintiff is attempting to do, *i.e.*, include the subcontractor's overhead and profit in the base cost formula. The Board ruled that this could not be done, and plaintiff, as subcontractor, was aware of the ruling and of defendant's interpretation of the clause involved. Therefore, when he signed the instant contract, he did so with knowledge of the defendant's past interpretation of this phase of the contract. A party who willingly and without protest enters into a contract with knowledge of the other party's interpretation of it is bound by such interpretation and cannot later claim that it thought something else was meant. *See* Franklin Company v. United States, 381 F.2d 416, 180 Ct.Cl. 666 (1967); City of Memphis, etc. v. Ford Motor Co., 304 F.2d 845, 849 (6th Cir. 1962); and Cresswell v. United States, 173 F.Supp. 805, 811, 146 Ct.Cl. 119, 127 (1959). In *Cresswell* we held:

If one party to a contract knows the meaning that the other intended to convey by his words, then he is bound by that meaning. The same is true if he had reason to know what the other party intended. * * *

■ It is clear that the plaintiff, by reason of its experience in the *Seal* case, knew or had reason to know the meaning intended by the identical agency of the government in the contract clause involved here. In any event, it was put on inquiry by such experience to investigate such intended meaning. Notwithstanding its duty in this regard, it did not make any inquiry nor assert any protest nor claim any different meaning before it made its bid and signed the contract. Under these circumstances, we conclude that plaintiff acquiesced in and is bound by the meaning of the clause as intended by the government. *See* Sun Shipbuilding & Dry Dock Co. v. United States, 393 F.2d 807, 818, 83 Ct.Cl. 358, 377 (1968); and Lykes-Youngstown Corp. v. United States, 420 F.2d 735, 744, 190 Ct.Cl. 348 (January 1970).

■■ Plaintiff also argues that if his "plain reading" interpretation is incorrect, then, in any event, the clause is ambiguous, and his interpretation of it was reasonable. In our opinion, the clause is not ambiguous. A plain reading of the clause supports the government's position. And, as we held in Bishop Engineering Co. v. United States, 180 Ct. Cl. 411, 416 (1967), a contract is not "rendered ambiguous by the mere fact that the parties disagree as to its meaning when the disagreement is not based on reasonable uncertainty of the meaning of the language used." Where a contract is not ambiguous, the wording of the contract controls its meaning and resort cannot be had to extraneous circumstances or subjective interpretations to determine such meaning. Duhame v. United States, 119 F.Supp. 192, 195, 127 Ct.Cl. 679, 683 (1954).

■■ If it can be assumed, *arguendo*, that the clause before us was ambiguous, we must consider whether or not plaintiff's interpretation of it was reasonable,

as it alleges. It is a general rule that where a contract is susceptible of two different interpretations, each of which is reasonable and consistent with the language of the contract and each of which leads to different results, the contract is ambiguous. *See* Sun Shipbuilding & Dry Dock Co. v. United States, supra, 83 Ct.Cl. at 372, 393 F. 2d at 815–816. In such a situation, the ambiguity will be resolved against the drafter of the document (the government in the case here). Bennett v. United States, 178 Ct.Cl. 61, 64, 371 F.2d 859, 861 (1967). To reach this result, however, the different interpretations of the parties must be reasonable and consistent with the contract provisions. The reasonableness of their interpretations cannot be determined by considering such interpretations in a vacuum, nor by considering the subjective intentions of the parties alone. The knowledge that each of the parties had as to the intended meaning of the other party to the contract must be considered along with the acts and conduct of each party in executing the contract in the light of such knowledge. When this is done in the instant case the interpretation of the plaintiff is unreasonable and that of the government reasonable.

The plaintiff is in much the same position here as was the plaintiff American Export Isbrandtsen Lines, Inc. (Export) in Sun Shipbuilding & Dry Dock Co. v. United States, *supra*. There the controversy involved the interpretation of a ship subsidy contract drafted by the government. Each of the parties interpreted the contract differently and each claimed that its interpretation was reasonable and consistent with the contract. However, prior to the signing of the contract, the government agency had sent a policy guidance letter to Export and other ship owners explaining its policy with respect to ship subsidy contracts and, in effect, showing its intended meaning of the contract provisions. Export signed the contract having this knowledge without protest and without making any inquiry. Later on, Export interpreted the contract in a way that was different to the policy guidance letter and different to the meaning intended by the government. We held that the interpretation of Export was unreasonable and that of the government reasonable. In this connection, the court said:

> Under these circumstances, Export's interpretation of the meaning of the contracts in question is not reasonable, even though the contracts could be said to be ambiguous. Since they are ambiguous, we can look to the policy guidance letter to determine their meaning. When this is done, the interpretation of Export becomes unreasonable and that of defendant reasonable. [*Id.* 393 F. 2d at 818, 183 Ct.Cl. at 377.]

The same reasoning must be applied to the case before us. The plaintiff knew by its experience as a subcontractor in the Seal case and the knowledge it gained therefrom, as indicated above, the intended meaning of the government in the contract involved here. Yet, it signed the contract willingly and without making inquiry. We conclude that under these circumstances, its interpretation of the contract is unreasonable and it is bound by the interpretation of the government.

Furthermore, if plaintiff's interpretation of the contract is followed literally, it could lead to extremely unreasonable results. For instance, if a subcontractor hires still another subcontractor to do a part of the work, under plaintiff's theory, the overhead and profits of the additional subcontractor would also be included in the base cost. On a major construction job, this process could be repeated over and over to the "sub of a sub, etc.," and the costs to the government would be increased enormously by the unilateral action of one of the parties to the contract. Any interpretation of the contract that would sanction such a result would be patently unreasonable.

The plaintiff devoted approximately one page of its brief to a breach of contract argument. We suspect that the defendant is right in characterizing

this as "filler material." In any event, plaintiff's argument is that this change order, which increased the total contract price some 38 percent, was of such a magnitude as to constitute a breach. The standard test for a breach of contract by a change order is whether the job, after the change order, is essentially the same as that contracted for by the parties. The nature and scope of the contract must be changed to constitute a breach. Air-A-Plane Corp. v. United States, 408 F.2d 1030, 1033, 187 Ct.Cl. 269, 275 (1969). The finished product in the present contract was the same as that contracted for—only the design was somewhat altered. There was no alteration in the nature and scope of the agreement. Plaintiff therefore presents nothing that could constitute a breach of contract.

For the foregoing reasons, we conclude that the decision of the Interior Board of Contract Appeals is correct and is entitled to finality. The motion of the government for summary judgment is granted. Plaintiff's motion for summary judgment is denied, and its petition dismissed.