Dennis A. SUROVCIK, Plaintiff,

v.

D & K OPTICAL, INC. and Larry Joel, individually, Defendants.

Civ. A. No. 86–1043.

United States District Court, M.D. Pennsylvania.

July 18, 1988.

Opinion on Motion to Alter or Amend Oct. 20, 1988.

Joseph J. Seritella, Thomas B. Schmidt, III, Pepper, Hamilton & Scheetz, Harrisburg, Pa., for plaintiff.

Robert B. Hoffman, Reed, Smith, Shaw and McClay, Harrisburg, Pa., for defendants.

### MEMORANDUM

RAMBO, District Judge.

*Procedural Background*

On July 30, 1986 plaintiff, Dennis A. Surovcik, filed a complaint claiming breach of an employment contract and fraudulent misrepresentation. On May 5, 1987 the court entered an order denying defendant Larry Joel's motion to dismiss, 702 F.Supp. 1166. Defendants have filed a motion for summary judgment. This motion has been fully briefed and is ripe for consideration. The court exercises jurisdiction pursuant to 28 U.S.C. section 1332(a)(1).

*Factual Background*

Plaintiff Surovcik became acquainted with defendant Joel during the negotiation and acquisition process between defendants Joel and D & K Optical, Inc. (D & K Optical), and Duling Optical Corporation (Duling) and Dentsply International, Inc. (Dentsply), the owner of Duling. The transaction involved defendants purchasing Duling (which consisted of retail optical stores) from Dentsply. Joel, a Kentucky resident, first contacted plaintiff, a Pennsylvania resident, in April 1982 about the purchase of Duling. Plaintiff was (and is) employed by Dentsply. On April 20, 1982 plaintiff received a document indicating defendant Joel was the authorized representative of a group of three people who later formed D & K Optical, a Minnesota corporation. The three were Joel, Orien Kirschbaum, and Brian Krasnik. The document was signed by the three men. Contact between the parties in the following months included telephone calls and Joel's and his partners' visits to Pennsylvania on various occasions to discuss the purchase of Duling.

After several weeks of negotiations, plaintiff contends during one of the telephone calls which plaintiff received at his home in York, Pennsylvania, Joel inquired whether plaintiff would be interested in leaving Dentsply and accepting a position with a new business entity to be created by the group to acquire Duling. Plaintiff alleges following this offer of employment numerous telephone conversations took place between plaintiff and Joel to negotiate the terms of this contract. Plaintiff drafted a document, an alleged employment agreement, and it was signed by plaintiff and Joel at the O'Hare International Airport in Chicago, Illinois on August 17, 1982.

Plaintiff contends he provided Joel with valuable information which helped in his procurement of Duling. These alleged exchanges of information continued until March 4, 1983, when Duling was purchased

by D & K Optical. After the purchase of Duling, Surovcik repeatedly informed Joel both orally and in writing he was available for employment pursuant to the terms of their agreement. Plaintiff alleges defendants D & K Optical and Joel have refused to honor the employment agreement.

*Discussion*

Federal Rule of Civil Procedure 56(c) states, summary "judgment ... shall be rendered forthwith if ... there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Third Circuit has instructed "the nonmoving party must produce specific facts showing that there is a genuine issue for trial ...; a genuine issue means that the evidence must create a fair doubt, and wholly speculative assertions will not suffice." *Jersey Central Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3d Cir.1985). With the standard for summary judgment in mind, the court examines the parties' respective positions.

*Construction of the Contract*

Defendants argue summary judgment should be granted on the breach of contract claims because neither of two contingencies expressly provided for in the alleged contract occurred, and material terms necessary for the creation of a contract are lacking.

■ Taking the lack of material terms argument first, the court is unpersuaded the alleged contract is deficient. The alleged contract is merely an agreement to enter into a future employment relationship. "To be enforceable, a contract must be complete.... [I]t must represent a meeting of the parties' minds on the essential terms of the agreement." *Yellow Run Coal Co. v. Alma–Elly–Yv Mines, Ltd.*, 285 Pa.Super. 84, 426 A.2d 1152, 1154 (1981). The document in question contains specifics on whom plaintiff was to work for, his compensation (outlined in detail), and the term of employment. That the agreement does not contain specifics on job title, duties, and financing arrangements does not render it unenforceable.

The contingencies theory is based on the following language in the alleged contract:

I, Dennis A. Surovcik, an individual residing at 4196 Caldwell Rd., York, Pa. 17402 (Party of the First Part), hearby [sic] agree to accept employment for and in behalf of Dr. Larry Joel, an individual residing at _____ (Party of the Second Part) as _____ of _____ upon the satisfactory completion of the following events:

1) The successful purchase by the Party of the Second Part of the Retail Optical Companies owned by Dentsply International Inc. (DII)

2) The execution of an employment contract between the Party of the First Part and the Party of the Second Part....

Complaint, Exhibit B at 1.

It is defendants' position the language of the alleged contract is plain and unambiguous. They contend the term "Party of the Second Part" refers to Joel as an individual only. From that premise, they conclude the two contingencies (Party of the Second Part purchasing the Dentsply companies and the Parties then executing an employment contract) did not occur. It is uncontested Joel himself did not purchase the Dentsply companies; D & K Optical, of which Joel had been president, purchased the Dentsply companies. And, Joel and Surovcik never executed an employment contract.

Plaintiff counters defendants' contingencies theory with his contention that the term "Party of the Second Part" does not refer to Joel as an individual, but rather refers to Joel in his representative capacity as agent for the group which formed D & K Optical. It is plaintiff's contention the name of the party Joel represented was undetermined at the time the alleged contract was executed, and that is why there are blank spaces after the words "(Party of the Second Part) as." Plaintiff argues those spaces would have been filled-in to indicate Joel's position, i.e., president, secretary, etc., and the name of the corporate entity or partnership. In further support of his agency theory, plaintiff points out

paragraph seven of the alleged contract. It reads:

> The Party of the Second Part, and his associate Brian Krasnik, an individual residing at _____, agree to *personally guarantee* the performance of the employment contract in their *individual capacities* as _____ and _____ of _____ Company.

Complaint, Exhibit B at 6 (emphasis added). Surovcik argues had Joel been the "Party of the Second Part" in his individual capacity only, paragraph seven would have been superfluous because Joel's mere signing of the alleged contract would have made him personally liable.

If plaintiff's agency theory were accepted by a factfinder, the first contingency (the purchasing of the Dentsply companies) would be found to have occurred because D & K Optical did in fact purchase the Dentsply companies, and Joel had been president of D & K Optical. The second contingency, though, still would not be found to have occurred; it is undisputed that no employment contract was ever executed. Plaintiff argues the contingency is really a condition *subsequent* and not a condition precedent to the enforceability of the document in issue. The court is somewhat perplexed by plaintiff's characterization of the clause because a condition subsequent is not something which *triggers* performance, but something which *excuses* performance. A condition subsequent can be defined as "any event the existence of which, by agreement of the parties, operates to discharge a duty of performance...." J. Calamari & J. Perillo, Contracts § 11–7 (3rd ed. 1987). Although the court finds the clause a condition precedent, its non-occurrence does not necessarily render the document in issue unenforceable.

■ Parties to a contract have a duty to act in good faith and to deal fairly. Restatement (Second) of Contracts § 205 (1981). Plaintiff contends after D & K Optical purchased the Dentsply companies, Joel repeatedly evaded the subject of plaintiff's employment. Plaintiff testified he made numerous attempts to bring about the execution of an employment contract, but Joel had not cooperated. Supplemental Appendix to Plaintiff's Brief in Opposition, Surovcik Deposition at, e.g., 103, 108 and 116. "Subterfuges and evasions violate the obligation of good faith in performance.... [B]ad faith may be overt or may consist of inaction...." Restatement (Second) of Contracts § 205 comment a (1981). A jury could find Joel failed in his obligation to act in good faith to execute an employment contract. Such a finding would bear on whether the non-occurrence of the event relieved the parties of their obligations under the alleged contract.

Defendants assert plaintiff's agency theory is wholly unreasonable. They contend the only logical fill-ins for the blank spaces appearing after the words "(Party of the Second Part) as" are words which would indicate what position plaintiff would hold in the yet-to-be-purchased Dentsply companies, i.e., the position of "Northeast Regional Manager" of "ABC Opticals." Defendants argue further that on the signature page of the document in question, Joel is designated as and signed as "Party of the Second Part" without reference to any representative capacity.

Pennsylvania applies the "plain meaning" rule of interpretation of contracts. *E.g., Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982). This approach to contract interpretation assumes

> the intent of the parties to a written contract is ... embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.... Hence, where language is clear and unambiguous, the focus of the terms of the agreement as *manifestly expressed,* rather than as, perhaps, silently intended.

*Id.* at 48–49, 444 A.2d at 661. In *Steuart,* the Pennsylvania Supreme Court reaffirmed its application of the plain meaning approach to contract construction after examining other approaches and policies. *Id.* at 48–52, 444 A.2d at 661–63. The court recognized "the dangers of focusing only upon the words of the writing in interpret-

ing an agreement." *Id.* at 50, 444 A.2d at 662 (quoting *In re Estate of Breyer,* 475 Pa. 108, 115 n. 5, 379 A.2d 1305, 1309 n. 5 (1977)). And, all important to the instant action, is that court's acknowledgement that "whether the language of an agreement is clear and unambiguous may not be apparent without cognizance of the context in which the agreement arose...." *Id.* 498 Pa. at 50, 444 A.2d at 662. With these considerations in mind, the court reaffirmed its application of the plain meaning approach citing the proper role of the courts as interpreters of contracts not drafters of contracts. In addition, the court found "the plain meaning approach enhances the extent to which contracts may be relied upon by contributing to the security of belief that the final expression of *consensus ad idem* will not later be construed to import a meaning other than that clearly expressed." *Id.* at 52, 444 A.2d at 663.

■ Whether the plain meaning rule is applicable depends on whether the contract is ambiguous. A contract is ambiguous "if ... [it] is reasonably susceptible of different construction, is obscure in meaning through indefiniteness of expression or has a double meaning." *Commonwealth, Dept. of Trans. v. Mosites Constr. Co.,* 90 Pa.Commw. 33, 36, 494 A.2d 41, 43 (1985). Ambiguities in contracts can be either patent to latent.

'A patent ambiguity is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used.' *Black's Law Dictionary* 105 (rev. 4th ed. 1968). In contrast, a latent ambiguity arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous.

*Steuart v. McChesney,* 498 Pa. at 53, 444 A.2d at 663. According to the Pennsylvania Supreme Court, the most common latent ambiguity " 'is one in which a writing refers to a particular person or thing and is thus apparently clear on its face, but upon application to external objects is found to fit two or more of them equally.' " *Id.*

(quoting *Easton v. Washington County Ins. Co.,* 391 Pa. 28, 35, 137 A.2d 332, 336 (1957)).

■ In construing the instant alleged contract, the court is mindful "a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction." *Commonwealth State Highway and Bridge Authority v. E.J. Albrecht Co.,* 59 Pa.Commw. 246, 251, 430 A.2d 328, 330 (1981) (quoting 8 P.L.E. Contracts § 146 (1971)). There must exist "objective indicia that ... the terms of the contract are susceptible of different meanings." *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir.1980). Whether an alleged ambiguity is patent or latent, a court can look to extrinsic evidence to determine the intent of the parties. *Z & L Lumber Co. v. Nordquist,* 348 Pa.Super. 580, 586, 502 A.2d 697, 700 (1985).

The alleged contract at issue in the instant action has both patent and latent ambiguities. The patent ambiguity results from the use of the word "individual." In the opening part of the document, Joel is described as an individual and at the end of the document he signs his name apparently as an individual, as there is no language indicating he is signing as anything but an individual. However, in paragraph seven it states Joel personally guarantees performance of the alleged contract. As plaintiff argues, if Joel were indeed signing in an individual capacity, this seventh paragraph would be unnecessary. This inconsistency renders the document patently ambiguous.

The latent ambiguity results from particular extraneous collateral facts. It is undisputed Joel was in contact with Dentsply to work out a purchase of the Dentsply companies for the group of people which eventually formed D & K Optical. Surovcik knew Joel was representing this group, not merely through conversations with Joel or others in the group, but through a document given to him and signed by Joel and his business associates, Kirschbaum and Krasnik. Complaint at ¶ 8 and Exhibit A. This document is dated April 20, 1982 and states in pertinent part:

Please be advised that a group of investors has been formed for the purpose of acquiring retail optical stores. The group consists of three (3) parties ... [Joel, Kirschbaum, and Krasnik]. The group has met on various occasions and has agreed and approved that the group's representative would be, Dr. Larry Joel. Any future transactions will be carried on as a group.

*Id.* at Exhibit A.

Given Surovcik's knowledge of Joel's relationship to "the group" of investors, and given Surovcik's knowledge of the intention of this group to purchase the Dentsply companies, the document is rendered latently ambiguous. Even though a contract to be construed against the party who drafted it, *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986), it would not be unreasonable, as a matter of law, for a jury to conclude the "Party of the Second Part" referred to the group which became D & K Optical.

■ Furthermore, there is support for an equity-based contract construction approach to contracts with latent ambiguities. As stated by the Third Circuit,

the meaning given to the words by one party should be given effect if the other party knew or had reason to know that it was in fact so given. If the words of the contract are to be attributed to both parties alike, in equal degree, it can not [sic] in advance be determined which party's meaning should be made effective. It is then necessary to determine whether either party knew or had reason to know the meaning that was actually given to the words by the other party.

*Emor, Inc. v. Cyprus Mines Corp.*, 467 F.2d 770, 775 (3d Cir.1972) (quoting 3 Corbin, On Contracts, 537, at 51–42 (1960)). If one willingly enters into a contract knowing the other party's interpretation, she or he is bound by that interpretation and may not later claim she or he had a different understanding of what the contract provided. *Perry & Wallis, Inc. v. United States*, 427 F.2d 722, 725, 192 Ct.Cl. 310 (1970). According to the Third Circuit, Pennsylvania has applied this rule. *See Emor, Inc.*,

*supra*, 467 F.2d at 775. Whether plaintiff can show Joel knew or had reason to know of plaintiff's understanding of the contract is a jury question.

■ In sum, there are other material facts in issue regarding one, the objectively known identity of the parties to the alleged contract, and two, whether Joel made a good faith effort to execute an employment contract with plaintiff after D & K Optical purchased the Dentsply companies. Therefore, the breach of contract claim against Joel cannot be decided on a summary judgment motion.

### D & K Optical's Liability Exposure

Defendants argue D & K Optical should be awarded summary judgment in its favor because it is undisputed:

(1) D & K was not in existence when the 'Agreement' in question was signed; (2) that D & K is not named in the 'Agreement' nor was a signatory to it; (3) that plaintiff never worked for D & K or Joel, nor was the 'Agreement' implemented in any way; and (4) that the requirements under D & K's corporate laws for entering into such an 'Agreement' were not satisfied, nor was any formal corporate action taken to satisfy it. [In addition] the parties likewise agree that D & K is not liable on this pre-incorporation 'Agreement' unless, following its incorporation, it adopted it.

Defendants' Reply at 6–7. Plaintiff argues "D & K Optical adopted the alleged contract through the conduct of its officers and agents, Joel and Krasnik." Plaintiff's Brief in Opposition at 12.

D & K Optical is a Minnesota corporation. The court agrees with both plaintiff and defendants that Minnesota law provides that a contract entered into by a promoter may be affirmatively adopted formally by the corporation after formation, or affirmative adoption may be shown by actions or acquiescence. *See, e.g., Battelle v. Northwestern Cement & Concrete Pavement Co.*, 37 Minn. 89, 33 N.W. 327 (1887). Plaintiff does not dispute D & K Optical took no formal action to adopt the alleged contract. He argues, however, D

& K Optical accepted the benefits of the alleged contract and thereby bound itself to the alleged contract. These benefits, plaintiff alleges, were in the form of plaintiff sharing his expertise in the optical field with defendants. Surovcik states he would not have shared as much information or reviewed defendants' proposed purchase offer if the alleged contract in issue had not been executed. Surovcik Deposition at 322–323.

The alleged contract in issue was not a contract which called for plaintiff to perform the type of function he alleges to have performed for defendants prior to defendants' purchase of the Dentsply companies. In his complaint plaintiff states he and Joel had telephone conversations regarding what would be Surovcik's duties if he worked for the purchasers of the Dentsply companies. "[H]e ... was to manage Duling's optical laboratory located in Louisville, Kentucky and also be responsible for the financial and accounting operations of Duling's purchaser." Complaint at ¶ 12. Clearly these activities were not the activities plaintiff engaged in prior to D & K Optical's purchase. Whether the execution of the alleged contract induced plaintiff to share his expertise with D & K Optical has no bearing on the issue of corporate adoption of the alleged contract. The court finds D & K Optical, Inc. did not adopt the alleged contract and therefore cannot be held liable under it. Summary judgment will be granted in favor of D & K Optical.

### Fraudulent Misrepresentation

The damages plaintiff claims in the fraudulent misrepresentation counts of the complaint are identical to the damages plaintiff claims in the breach of contract counts. Plaintiff alleges his damages in both causes of action to be loss of the "salary, fringe benefits and other compensation in the form of equity in D & K, as set forth in the Agreement." Complaint at ¶¶ 28, 31, and 36. These damages demonstrate harm stemming from the alleged breach of contract, not harm stemming from fraudulent misrepresentation. *Lokay v. Lehigh Valley Co-op. Farmers, Inc.*, 342 Pa.Super. 89, 492 A.2d 405 (1985). In his brief in opposition, plaintiff puts forth for the first time the harm he alleges to have suffered from the alleged fraudulent misrepresentation. Surovcik claims he acted to his detriment on the alleged fraudulent misrepresentation in three ways:

1) [He] ... gratuitously advised the defendants regarding their proposal to acquire the Dentsply retail optical business and on ways that business's performance might be improved;

2) [He] ... advised his employer that he was going to be employed by defendants, and hence would be leaving his current employment, thereby damaging his prospects for advancement within Dentsply; and

3) [He] ... refrained from seeking alternate employment opportunities outside of Dentsply until a later point in time.

Plaintiff's Brief in Opposition at 18–19.

As the *Lokay* court stated so succinctly, "[d]amages for fraud are limited to what losses were immediately and proximately caused by the fraud." *Lokay*, 342 Pa.Super. at 99, 492 A.2d at 410. Surovcik "is entitled to all pecuniary losses which result[ed] as a consequence of his reliance on the truth of ... [Joel's] representations." *Delahanty v. First Pa. Bank, N.A.*, 318 Pa.Super. 90, 117, 464 A.2d 1243, 1257 (1983). The first of plaintiff's asserted harms has nothing to do with financial matters. Plaintiff cannot, and does not attempt to, show how giving his advice to Joel and the others harmed him financially. Perhaps this advice benefitted Joel and his associates, but benefit to one party does not in and of itself constitute harm to the other.

The second of the alleged harms, lost advancement opportunities, appears at first glance to have merit, but upon examination of the record, it does not. Plaintiff can cite to only one instance where he believes he could have been considered for a promotion at Dentsply were it not for his involvement with Joel. Plaintiff expressed interest in the position at Dentsply of Controller for International Operations. Surovcik testified his supervisor, John Behrmann, told

Surovcik he "wasn't to be considered for that slot ... [because he] did not have sufficient international exposure." Surovcik Deposition at 192, 194. Plaintiff presents no evidence whatsoever which would suggest Behrmann's explanation of why Surovcik would not get the promotion was untrue or incomplete. Furthermore, Behrmann's testimony on Surovcik's job performance underscores the fact that Surovcik has presented no evidence supporting his promotion-harm claim. When Behrmann was asked whether Surovcik's involvement with Joel and his duties as a Dentsply employee ever became a problem for Dentsply because of conflict of interest, he replied: "No, not to my knowledge. I think he handled it very professionally." Defendants' Reply Brief, Attachment, John Behrmann's Deposition at 9.

The third of the alleged harms is somewhat like the first one—regardless of whether it is true, it does not constitute harm. Plaintiff does not allege he turned down job offers, only that he did not seek employment. Even if the mere delaying of an employment search were considered harm, plaintiff would have a difficult time proving the delay was due to his reliance on Joel's representations. Plaintiff did not contact an employment search firm until June of 1987 and did not otherwise seek out other employment. Surovcik Deposition at 49, 50. That was approximately three and one half years after plaintiff felt Joel was not going to honor the alleged contract in issue. *Id.* at 100. Given this fact, plaintiff cannot claim he did not seek other employment because he was relying on Joel's representations.

■ Surovcik does not allege fraud damages in his complaint, and the alleged fraud damages in his brief in opposition do not constitute pecuniary loss. Therefore, summary judgment will be granted in defendants' favor on counts III and IV. An appropriate order will issue.

## ON MOTION TO ALTER OR AMEND

### Background

On July 11, 1988 this court issued a memorandum and order granting defend-

ants' motion for summary judgment as to Counts I, III and IV and denying defendant Larry Joel's motion for summary judgment as to Count II of the plaintiff's complaint. Doc. of Rec. No. 49. On August 15, 1988, defendant Joel filed a motion to alter and/or amend the opinion and order of July 18, 1988 or, in the alternative, renewed motion for summary judgment. Although this motion was out of time for the filing a motion for reconsideration (Local Rule 604 provides such motions shall be filed within ten days after the entry of the order concerned), the court ordered it briefed and responded to because it seemed to present issues which, if decided in Joel's favor, would certainly preclude the action from going to trial. The motion has been fully briefed and is ripe for consideration.

### Discussion

Joel raises two issues which he contends necessitate entry of judgment in his favor. Both issues involve the court's prior finding that the "employment agreement" is ambiguous as to Joel's capacity. The court has found it is an issue of fact for the jury to determine whether Joel signed the document solely as an individual or in a representative capacity of the then yet to be formed D & K Optical company. *See* Doc. of Rec. No. 49 at 10–12. In the instant motion, Joel provides the court with an excerpt from the deposition of Joel taken October 7, 1987. In this excerpt, plaintiff's counsel is cross-examining Joel and attempting to clarify what is meant by the critical language of the document in its reference to Joel's capacity. In the excerpt, counsel for plaintiff appears to be attempting to gain Joel's agreement that the critical language in the document refers to Joel in a solely individual capacity and not a representative one.

Q [by plaintiff's counsel, Mr. Grose]: Well, we'll get into that in a little bit. Let's get into it right now.

The agreement that I'm looking at, which is Deposition Exhibit No. 5, would you read the first paragraph of that for me, please?

A [by Larry Joel]: "I, Dennis A. Surovcik, an individual residing at 4196 Caldwell Road, York, Pennsylvania, party of the first part, hereby agree to accept employment for and in behalf of Doctor Larry Joel, an individual residing at blank, upon the satisfactory completion of blank."

Q: Okay. It says that he hereby agrees to accept employment for and in behalf of you as an individual, doesn't it?

A: Uh-huh (yes).

Q: It doesn't say some entity that is going to buy the southern half of Duling Optical, does it?

A: No, it does not.

Q: Was that discussed at all when you read this agreement between you and Dennis?

A: Yes.

MR. HOFFMAN [Joel's counsel]: Excuse me. What is the "this" or the "that" in that question? I think that's unclear.

MR. GROSE: The "that" is whether or not in fact that he agrees to accept employment on behalf of Doctor Joel, not some group that is going to purchase the southern half of Duling Optical.

(To the witness) This agreement says that he's going to accept employment for and in behalf of you, right?

Defendant Joel's Motion at Exhibit B, pages 141–142 of Joel's Deposition.

■ These statements made by plaintiff's counsel at the deposition regarding Joel's capacity are, argues Joel, judicial admissions binding on the plaintiff. Joel asks this court to find that based on these statements made by plaintiff's counsel, plaintiff has conceded defendant's construction of the contract. Defendant's construction of the contract is that Joel signed the document as an individual, solely, and as such Joel was not contractually bound to employ plaintiff because Joel himself did not purchase the Dentsply companies (a contingency to Joel employing plaintiff). Judicial admissions "are those made in court by a person's attorney for the purpose of being used as a substitute for the

regular legal evidence of the facts at the trial." Black's Law Dictionary 44 (5th ed. 1979). After consulting the authority cited by Joel in support of his argument on this point and considering the definition of judicial admissions, the court finds plaintiff's counsel's statements are not judicial admissions and do not, therefore, foreclose at trial the issue of Joel's capacity.

The other issue raised in the motion involves the court's prior ruling that D & K Optical did not ratify or adopt the alleged agreement and could not be liable. Joel argues since Count II proceeds on the theory Joel was acting as an individual, he cannot be found liable because he did not purchase the Dentsply companies. D & K Optical purchased them. In response to this argument, plaintiff articulates for the first time a theory of liability based on Joel's alleged capacity as a "promoter" of D & K Optical.[1] In Pennsylvania

[w]hen a party is acting for a proposed corporation, he cannot, of course, bind it by anything he does, at the time, but he may (1) take on its behalf an offer from the other, which, being accepted after the formation of the company, becomes a contract; (2) make a contract at the time binding himself, with the stipulation or understanding, that if a company is formed it will take his place and that then he shall be relieved of responsibility, or (3) bind himself personally without more and look to the proposed company, when formed, for indemnity.

*O'Rorke v. Geary*, 207 Pa. 240, 242, 56 A. 541, 542 (1903).

Joel argues in his reply brief plaintiff should not be permitted to proceed to trial upon a promoter liability theory because such a theory, he contends, is in actuality a separate cause of action which was not pled.

■ The court finds although a promoter theory has not been pled separately, plaintiff may proceed on that theory because Count II *does* provide Joel should be held personally liable (albeit, without men-

---

**1.** At this time, the court will not engage in an analysis of whether Joel's conduct vis a vis D & K Optical, prior to its formation, constituted the activities of a promoter.

# 1180

tioning the word "promoter"), and as extensive discovery on the parties' relationships has taken place, Joel is not prejudiced in having to defend on this theory. Although the theory was not previously articulated, the possibility Joel could be viewed as a promoter has certainly been present in light of the information gleaned during discovery.

## Conclusion

Joel's motion will be denied because plaintiff's counsel's statements are not judicial admissions, and because the court's prior ruling in D & K Optical's favor does not preclude the possibility Joel could be held personally liable. An appropriate order will issue.