**INTERNATIONAL TRANSDUCER CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–821C.

United States Court of Federal Claims.

March 8, 1994.

Laurence P. Lubka, Los Angeles, CA, for plaintiff. Pamela G. Gross, Sedgwick, Detert, Moran & Arnold, and Joseph J. Petrillo and Eric L. Lipman, Petrillo & Hordell, of counsel.

Harold D. Lester, Jr., Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. Eileen B. White, Naval Sea Systems Command, of counsel.

*OPINION*

NETTESHEIM, Judge.

This case comes before the court after argument on defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), and plaintiff's motion for partial summary judgment. The issue to be decided is wheth-

er the Navy is obligated to pay a contractor for the cost impact as a result of its ordering part or a portion of the quantity set forth in an option contract between the parties.[1]

## FACTS

The following facts are undisputed, unless otherwise noted. Pursuant to solicitation by the Naval Sea Systems Command ("NAVSEA"), the Department of the Navy issued Request for Proposal ("RFP") N00024–89–R–6000(Q) for the purchase of various types of hydrophones. Hydrophones are sophisticated sensors used with underwater equipment to measure the depth, location, and speed of underwater objects. International Transducer Corp. ("plaintiff"), one of a limited number of companies capable of manufacturing such sensors, obtained a copy of the NAVSEA solicitation and submitted a bid on or about August 30, 1989.

NAVSEA awarded Contract No. N00024–90–C–6086 to plaintiff on March 14, 1990, to manufacture three different hydrophones. The contract contained various contract line items, with each line item assigned a contract line item number ("CLIN") that described the particular transducer being purchased. The contract referred to each CLIN as an "Item Number." Each CLIN was further broken down into subline item numbers ("SLINs").

The use of contract line items in military procurement is governed by the Uniform Contract Line Item Numbering System, Federal Acquisition Regulation ("FAR") 204.71—204.7109, 48 C.F.R. §§ 204.71—204.-7109 (1989), in force at the time the contract was awarded. This provision describes the use of contract line item numbers and subline item numbers:

> Subline items that have a separate delivery schedule, require a separate identification at the time of shipment, and/or are separately priced for payment purposes (alpha suffix) shall be established in lieu of

line items at the discretion of the contracting officer. This category subline item shall be established whenever a capability must be provided to accumulate separately identified price and/or quantity data at the contract line item level.

> . . . .

> Whenever subline items of this category (alpha suffix) [SLINs] are established, the associated contract line item shall serve only as a common denominator for the accumulation of management data by the procuring activity and *all requirements for the associated contract line item will be identified as subline items. (All shipments and payments will be made at the subline item level.)*

48 C.F.R. § 204.7104–2(b) (emphasis added). To further clarify the usage of line and subline items, the regulations stress:

> In no instance will the contract line item/subline item structure be constructed in such a way as to require the identification of contractor products or services (shipment or performance) at the subline item level and contractor payment at the contract line item level. . . .

48 C.F.R. § 204.7104–2(c)(2).

The regulations also provide guidance on how to price contract line and subline items under the contract. Each CLIN is required to have "a single unit price or, if no unit price is established, a single total price or amount." 48 C.F.R. § 204.7103–1(a)(1). This pricing scheme does not apply, however, in contracts such as the one at bar where "associated subline items of other than an informational nature are separately priced in accordance with 204.7104–2(c)(2), in which case, no price shall be assigned to the contract line item. . . ." 48 C.F.R. § 204.7103–1(a)(1). The CLINs in plaintiff's contract were not assigned either a single unit price or a single total price, but, instead, each CLIN contained several SLINs, each of which was separately priced by unit price

---

1. The court indicated during oral argument that, based on the record developed to that point, plaintiff was likely to prevail on its motion for partial summary judgment. Subsequently, the case was suspended to facilitate settlement. When the parties indicated that they had abandoned efforts at settlement, the court resumed work on the case. The court then asked each party to submit briefs addressing the relevance, if any, of the Uniform Contract Line Item Numbering System, 48 C.F.R. §§ 204.71–204.7109 (1989). Based on the briefs submitted, the court has reconsidered the position that it expressed at oral argument.

and total quantity price. Each SLIN listed beneath its parent CLIN contained exactly the same single item as the CLIN. The CLINs and SLINs in issue are listed as "Groups." Thus, an item purchased under SLIN 0095AA, the first item in Group 3, was exactly the same as that purchased under SLIN 0095AD.

In the excerpt below, taken from the schedule attached to the original contract, 0095 is the CLIN for the DT–574 Hydrophone. Item Nos. 0095AA through 0095AD are SLINs for this CLIN. In this excerpt all information, except for the dollar amounts under "Unit Price" and "Amount," was part of the solicitation. Plaintiff supplied the dollar amounts with its offer, and these were incorporated into the resulting contract. The pertinent portion of the Schedule in which this information was listed stipulates:

| ITEM NO. | SUPPLIES/SERVICES (GROUP 3) | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0095 | DT–574 Hydrophone (Production Equipment) | | | | |
| 0095AA | DT–574 Hydrophone (Production Equipment) PMS 409 (FY88) (SCN) | 944 | Ea | $207 | $195,408 |
| 0095AB | DT–574 Hydrophone (Production Equipment) PMS 409 (FY89) (SCN) | 944 | Ea | $207 | $195,408 |
| 0095AC | DT–574 Hydrophone (Production Equipment) PMS 418 (FY89) (SCN) | 1400 | Ea | $207 | $289,800 |
| 0095AD | DT–574 Hydrophone (Production Equipment) PMS 409 (FY90) (SCN) | 944 | Ea | $207 | $195,408 |
| 0096 | Intentionally Blank | | | | |
| 0097 | DT–574 Hydrophone (Production Equipment) | | | | |
| 0097AA | DT–574 Hydrophone (Production Equipment) (FY91) (SCN) | 4592 | Ea | $196 | $900,032 (SEE NOTE A) |
| 0097AB | DT–574 Hydrophone (Production Equipment) (FY91) (OPN) | 980 | Ea | $196 | $192,080 (SEE NOTE A) |
| 0097AC | DT–574 Hydrophone (Production Equipment) (FY92) (SCN) | 6888 | Ea | $194 | $1,336,272 (SEE NOTE A) |
| 0097AD | DT–574 Hydrophone (Production Equipment) (FY92) (OPN) | 980 | Ea | $194 | $190,120 (SEE NOTE A) |

As the regulations note, SLINs are used, *inter alia,* as an accounting tool that allows the parties to identify the source of funding for each item. The SLINs associated with a particular CLIN differed only in the quantity being ordered; the fiscal year in which the quantities were to be delivered; and, in some cases, the appropriation classification from which payment would be made, *i.e.,* either the Ship Construction, Navy ("SCN") account or Other Procurement, Navy ("OPN") account. In addition, SLINs were not listed separately from the CLINs; rather, the CLINs and SLINs were both listed under the title "Item Number."

The notation "SEE NOTE A," referenced with certain SLINs, states:

> Option Item to which clause entitled "OPTION FOR ITEMS ... 0097, 0100, 0102, 0104 ..." is applicable and which is to be supplied only if and to the extent said option is exercised.

The contract contained an option clause, Clause H–4, which afforded the Navy the option to purchase certain items after the base period for contract performance. Clause H–4 states, in pertinent part:

> OPTION FOR ITEM(S) ... 0097, 0100, 0102, 0104.... The Government may, at any time on or before the times specified below, require the Contractor to furnish *all or part* of Items ... 0097, 0100, 0102, 0104 ... for delivery at the time(s), place(s) and at the price(s) as set forth herein. This option shall be exercised if at all, by written or telegraphic notice singed [sic] by the Contracting Officer and sent within the option period specified below:

FY–91

... 0097AA, 0097AB, 0100AA, 0100AA, 0100AB, 0102AA, 0102AB, 0104AA, 0104AB ............ 31 MAY 1991

FY–92

... 0097AC, 0097AD, 0100AC, 0100AC, 0102AD, 0102AE, 0104AD, 0104AE ................... 31 MAY 1992

FY–93

... 0097AE, 0097AF, 0100AD, 0100AE, 0102AF, 0102AG, 0104AF, 0104AG.................... 31 MAY 1993

(Emphasis added.)

The instant dispute arose on or about May 30, 1991, when the Navy issued Modification No. P00002 to the contract, exercising certain option-quantity SLINs under CLINs 0097, 0100, 0102, and 0104 for Fiscal Year 1991. This modification exercised seven of the contract options. However, on four of the options, the Navy did not exercise the amount listed in the contract. Instead it ordered only part of the available quantities. These SLINs were 0097AA, 0097AB, 0102AA and 0104AA. The quantities ordered by the Navy under contract Modification No. P00002 were, as follows:

| SLIN | Contract Quantity | P00002 Quantity |
|------|-------------------|-----------------|
| 0097AA | 4592 | 2296 |
| 0097AB | 980 | 944 |
| 0100AA | 100 | 100 |
| 0102AA | 8 | 4 |
| 0102AC | 30 | 30 |
| 0104AA | 14 | 4 |
| 0104AB | 8 | 8 |

As a result of what it characterizes as an unanticipated reduction in the Navy's order, plaintiff contends that it incurred increased unit costs. The Navy refused to pay for any of these increased costs.

On or about June 11, 1991, James R. Johnstone, plaintiff's Manager of Administration, submitted a written claim to the Navy, stating "ITC understands the Government may exercise an option to purchase all or any part of an *item*, such as, '0097' [ie., 0097AA + 0097AB + 0097AC + 0097AD (all) or, 0097AA + 0097AB (part) ]." Plaintiff claimed that by purchasing only part of a SLIN, NAVSEA defeated the quantity pricing calculation used by plaintiff in its bid. Plaintiff attached ten pages of financial data to support its claim that ordering smaller quantities increased its unit cost. It requested that NAVSEA either exercise the option as understood by plaintiff or consider its Option Quantity Change Cost Proposal. In a certified letter dated November 27, 1991, Contracting Officer Kathleen M. Monahan explained that "[o]n 1 July, 1991, the Contracting Officer advised ITC that the Navy's interpretation of the Option clause was reasonable, *i.e.*, that the Option clause allows the partial exercise of the different fiscal year options. Therefore, no action would be taken on ITC's cost proposal...." After noting that on August 1, 1991, plaintiff submitted its certified claim on this issue, the contracting officer concluded that plaintiff's claim should be denied.[2] On November 30, 1992, plaintiff filed this action seeking damages of $239,-060.00.

## DISCUSSION

In order to resolve the parties' dispute, the court must determine what is a reasonable interpretation of the contract. The parties have no disagreement as to the wording of the contract, the essence of the Navy's order, or other issues of fact. The only dispute is how the contract should be interpreted. Summary judgment is appropriate in such instances because construction of a contract is a matter of law, not fact. *E.g., Government Sys. Advisors, Inc. v. United States,* 847 F.2d 811, 812 (Fed.Cir.1988); *P.J. Maffei Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916–17 (Fed.Cir.1984); *B.D. Click*

*Co. v. United States,* 222 Ct.Cl. 290, 297, 614 F.2d 748, 752 (1980).

### 1. *Contract interpretation*

■■■ The court's first duty in construing disputed contractual provisions is to " 'ascertain analytically whether *vel non* an ambiguity existed' " in the language of the contract. *John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 456 (1985) (quoting *Enrico Roman, Inc. v. United States,* 2 Cl.Ct. 104, 106 (1983)), *aff'd mem.,* 785 F.2d 325 (Fed.Cir. 1985) (Table). An interpretation giving reasonable meaning to all parts of a contract will be endorsed over one that leaves portions of the contract meaningless. *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir.1985). It is ·a fundamental precept of common law that the intention of the parties to a contract controls its interpretation. *Firestone Tire & Rubber Co. v. United States,* 195 Ct.Cl. 21, 30, 444 F.2d 547, 551 (1971). The avowed purpose and primary function of the court is to ascertain the intent of the parties to a contract. *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1185 (Fed. Cir.1988) (citing S. Williston, *A Treatise on the Law of Contracts* § 601 (3d ed. 1961)). The ordinary meaning of the contract's language governs, *American Science & Eng'g, Inc. v. United States,* 229 Ct.Cl. 47, 57, 663 F.2d 82, 88 (1981), and a party's subjective, unexpressed intent plays no role in interpreting a contract. *See ITT Arctic Serv., Inc. v. United States,* 207 Ct.Cl. 743, 752, 524 F.2d 680, 684 (1975) (citing cases).

■■■ Established court precedent and rules of construction require that contract provisions should not be interpreted as conflicting with one another unless there is no other possible reasonable construction of the language. *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 395, 351 F.2d 972, 979 (1965). However, a contract is ambiguous if it is susceptible of two different interpretations, each of which is found to be consistent with the contract's language. *Sun Shipbuilding & Dry Dock Co. v. United States,* 183 Ct.Cl. 358, 372, 393 F.2d 807, 815–16 (1968).

---

**2.** Plaintiff states that it received notice of the

decision on December 6, 1991.

### 2. *Plain meaning*

"Wherever possible, courts should look to the plain language of the contract to resolve any questions of contract interpretation." *Aleman Food Serv., Inc. v. United States,* 994 F.2d 819, 822 (Fed.Cir.1993) (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1272 (Fed.Cir.1991)). The Federal Circuit recently instructed that the first priority in a contract dispute is to resolve the matter employing a plain meaning interpretation. *Aleman Food Serv.,* 994 F.2d at 822.

Each party argues that a plain language reading of the contract supports its interpretation as the only reasonable one and that to construe the contract otherwise would defeat or invalidate the contract itself. According to plaintiff, defendant's interpretation violates the basic canons of contract law by rendering the contract illusory for lack of definiteness. In contrast, defendant contends that plaintiff has failed to state a valid claim for relief since the Navy's conduct was within the parameters of the contract. Although a plain meaning of the various contract provisions is not evident if the contract is read in isolation, when viewed alongside the governing FAR provisions, no ambiguities are present.

### 3. *Patent ambiguity*

 The law is well settled that ambiguities in a contract will be resolved against the drafter. *Interstate Gen. Gov't Contractors, Inc. v. Stone,* 980 F.2d 1433, 1434 (Fed.Cir. 1992). This rule of *contra proferentem* requires, however, that the contractor follow an interpretation that is reasonable. *United Pac. Ins. Co. v. United States,* 204 Ct.Cl. 686, 695, 497 F.2d 1402, 1407 (1974). If the ambiguity is patent, an exception to the rule of *contra proferentem* raises the duty of inquiry regardless of the reasonableness of the contractor's interpretation. *Fortec Constructors,* 760 F.2d at 1291. In order to discharge this duty, the non-drafting party is tasked with asking the contracting officer the true meaning of the contract. *Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed.Cir.1993); *Interstate Gen. Gov't Contractors,* 980 F.2d at 1435. The central issue is whether the disputed provisions were patently ambiguous at the time of contracting. If differing constructions of the contract's plain meaning are plausible, the court must inquire whether such discrepancies would be apparent to a reasonable bidder. *Wickham Contracting Co. v. United States,* 212 Ct.Cl. 318, 324, 546 F.2d 395, 398 (1976). Reasonableness is the standard. Contractors must inquire only as to major discrepancies, obvious omissions, or manifest conflicts in contract provisions. *WPC Enter., Inc. v. United States,* 163 Ct.Cl. 1, 6, 323 F.2d 874, 877 (1963).

The standard for determining a patent ambiguity is calibrated, but not precisely. To be denominated a patent ambiguity, the ambiguity must unequivocally be " 'so glaring as to raise a duty to inquire.' " *Fort Vancouver Plywood Co. v. United States,* 860 F.2d 409, 414 (Fed.Cir.1988) (quoting *United States v. Turner Constr. Co.,* 819 F.2d 283, 286 (Fed. Cir.1987)). Imposing this duty of inquiry encourages clarification of ambiguities or correction of errors before the contract is awarded and thereby avoids the need for expensive and complex litigation during the contract administration. *Monarch Painting Corp. v. United States,* 16 Cl.Ct. 280, 287 (1989) (citing *Beacon Constr. Co. v. United States,* 161 Ct.Cl. 1, 6–7, 314 F.2d 501, 504 (1963)). The principle of patent ambiguity deters a "bidder, who knows (or should know) of a serious problem in interpretation, from consciously taking the award with a lower bid ... with the expectation that he will then be able to cry 'change' or 'extra' if the procuring officials...." disagree with contractor's interpretation. *S.O.G. of Arkansas v. United States,* 212 Ct.Cl. 125, 131, 546 F.2d 367, 371 (1976).

 Plaintiff's position can be summarized, as follows: The contract between NAVSEA and plaintiff was an option contract. In the event the Navy exercised its option for any of the SLINs listed in the contract, it was obligated to purchase the entire contract quantity listed under the SLIN, not simply a portion thereof. Thus, under the option clause in the contract, the Navy was required either to purchase all of the quantities in all of the various SLINs of a CLIN that related to a fiscal year or to

purchase the entire quantity of any one SLIN or combination of SLINs of that CLIN that corresponded to that same fiscal year. Plaintiff argues that the Navy breached the contract when it issued Modification No. P00002, ordering only a portion of the specified SLINs and not the entire quantity of each. To allow the Navy to purchase quantities in this manner would render the contract itself illusory under basic contract law.

Defendant maintains that the option clause in the contract, Clause H–4, expressly provided that the Navy could purchase "all or part" of specifically identified option quantity CLINs. No provision in the contract limits the Navy to exercising the option in "blocks" of quantities under each CLIN. Defendant argues that accepting plaintiff's interpretation, in effect, would add "new language" to the contract and thereby change that to which the parties had agreed. According to defendant, not only has plaintiff failed to identify any contract provision showing that the language of Clause H–4 is limited by the SLINs, but plaintiff also fails to explain adequately the presence of the notation "SEE NOTE A" next to various SLINs. Plaintiff's interpretation of the contract is therefore incomplete.

Two particular contract provisions contain the language that is the focus of the present dispute: the "all or part" language of clause H–4 of the contract and the "SEE NOTE A" notation in the list of option items.

a. *The "all or part" language*

Clause H–4, a schedule on page 75 of the contract, states in pertinent part:

The Government may, at any time on or before the times specified below, require the Contractor to furnish *all or part of Items* ... 0097, 0100, 0102, 0104 ... for delivery at the time(s), place(s) and at the price(s) as set forth herein....

(Emphasis added.)

Plaintiff argues that there is an important distinction to be made between "item" and "sub-line item." Plaintiff states that while the option provision does afford the Navy the opportunity to require contractors to furnish all or part of certain items, it does not allow

the Navy the same opportunity for sub-items, *e.g.,* all or part of 0097AA. A sub-item is a part of an item. According to plaintiff, Clause H–4 clearly distinguishes items from sub-items: Items have four-digit numbers, *e.g.,* 0097, while sub-items have alphanumeric designations, *e.g.,* 0097AA. What plaintiff fails to mention is that both items and sub-items are listed under the heading "Item No." in the contract schedule.

Plaintiff states:

Clause H–4 of the Contract afforded the Navy two choices with regard to option exercise. The Navy could either purchase "all" of the quantities in all of the various SLINs of a CLIN which related to a fiscal year ("all of the CLIN"), or, it could purchase the entire quantity of any SLIN or combination of SLINs of that CLIN which corresponded to that same fiscal year ("part of the CLIN").

Plf's Br. filed May 10, 1993, at 5.

In plaintiff's view defendant's interpretation of Clause H–4 is sustainable only if the clause makes reference to both item and sub-item numbers. As plaintiff argued in a June 11, 1991 letter to the Navy, "[i]f it was [the] Government[']s intent to unilaterally exercise options for *items* at quantities less than specified for *subitems,* at subitem prices, the Government should have unambiguously instructed Contractors to bid stair-step prices accordingly (i.e., "0097AA" in quantities of: 1–10, 10–25, 25–50, etc.)...." (Emphasis in original.)

Defendant's interpretation of Clause H–4 calls for a much different result. Defendant points out that there is no language in Clause H–4 qualifying the term "part" in the phrase "all or part of Items." No language appears that requires the Navy to order in blocks of certain amounts, nor all of the items in a given item. There is no language limiting "part" to a particular subset of a given item. Despite plaintiff's present attempts to define "part" as a "block of units based upon appropriation type," that simply was not the language used in Clause H–4, nor was it the intent of the clause, according to defendant. Evidence of the Navy's contractual intent is found in its response to Bid Question # 2, which stated "[the Navy has] no commitment

to fund any or all of the option quantities. . . ."

Defendant also rejects plaintiff's distinction that sub-items are a part of an item. For example, Clause H–4 expressly states that the Navy may order any "part" of Item 0097. No language limits "part" to a particular subset of Item 0097, nor are the different fiscal year divisions of Item 0097 defined as "subitems."

### b. The "SEE NOTE A" notation

The notation "SEE NOTE A," referenced alongside certain SLINs states: "NOTE A: Option Item to which clause entitled 'OPTION FOR ITEMS ... 0097, 0100, 0102, 0104 ...' is applicable and which is to be supplied only if and to the extent said option is exercised."

Defendant argues that plaintiff's interpretation must fail because it does not adequately explain the presence of Note A. The inclusion of this notation next to each SLIN, in conjunction with the provision of the option clause allowing the Navy to order "part" of items 0097, 0100, 0102, and 0104, indicates that the Navy had the right under the contract to order only a portion of each SLIN.

Defendant offers the following illustration: SLIN 0097AA sets forth an option quantity of 4,592 hydrophones, a unit price of $196.00 for each hydrophone, and a total option quantity amount of $900,032.00, if the total option quantity were exercised. Directly beneath the total option quantity amount is the notation "SEE NOTE A." At "Note A" the contract provides that this SLIN is an option item "which is to be supplied if and to the extent said option is exercised." The fact that "SEE NOTE A" is listed directly below certain SLINs lends credence to defendant's theory that each SLIN was to be treated as a separate item. As defendant points out, under plaintiff's interpretation, the language in "Note A" and its specific inclusion next to specific SLINs, such as 0097AA, would otherwise make no sense—that is, if the Navy was required to purchase the entire option quantity listed in SLIN 0097AA, there would

be no reason to state by reference in SLIN 0097AA that the items in the SLIN were to be supplied only to the extent that the option is exercised.

Plaintiff responds that "SEE NOTE A" references options for Item Numbers—CLINs—and not for SLINs. According to plaintiff, "Note A" is "a reminder to contractors that the Navy might elect to exercise some, but not all, of the SLIN options within a Item Number." Plf's Br. filed May 10, 1993, at 13. Not only does the note reference CLINs, but clause H–4, also referencing CLINs, states that the option applies to all or part of each CLIN number, meaning each SLIN sub-item. Plaintiff asserts that since Note A was so similar in language to Clause H–4 it was led directly to Clause H–4, which addresses options. Plaintiff also asserts that its unit pricing of the option portion of the contract was based on the assumption that the number of hydrophones listed in each SLIN would be purchased. The unit prices do not vary among SLINs with different quantities because of this assumption. To allow the Navy to purchase less than the quantities listed in the SLINs would ignore the efficiencies of mass production that formed the basis of plaintiff's bid.[3]

██ When viewed in isolation, the ambiguity in the contract language is not patently ambiguous. Contracts generally and contracts with the Government, in particular, are not read in isolation, however. Government contracts must be read in light of the regulations under which they are administered. The regulations applicable to the present dispute eliminate any ambiguity that may have existed.

### 4. Latent ambiguity

The familiar rule that a non-patent ambiguity be resolved against the drafter, however, "is subject to the condition that the alternative interpretation tendered by the other party be a reasonable one." William F. Klingensmith, Inc. v. United States, 205 Ct. Cl. 651, 657, 505 F.2d 1257, 1261 (1974) (per curiam); Perry & Wallis, Inc. v. United States, 192 Ct.Cl. 310, 316, 427 F.2d 722, 726

---

3. Although this argument distorts the consequences of plaintiff's interpretation, as defendant argues, it is material to the reasonableness of plaintiff's interpretation.

(1970). The alternative interpretation need only be within the "zone of reasonableness," the Government shouldering "the major task of seeing that ... the words of the agreement communicate the proper notions...." *WPC Enterprises,* 163 Ct.Cl. at 6, 323 F.2d at 877. In judging the import of words of the contract, "the context and intention [of the contracting parties] are more meaningful than the dictionary definition." *Rice v. United States,* 192 Ct.Cl. 903, 908, 428 F.2d 1311, 1314 (1970). The contract language "must be afforded the meaning derived from the contract by a reasonably intelligent person acquainted with the contemporary circumstances." *Firestone Tire & Rubber Co.,* 195 Ct.Cl. at 30, 444 F.2d at 551. The court frequently must place itself in the shoes of a reasonable contractor in considering the contract language. *Id.*

One of the fundamental principles of contract law is that a contract is to be interpreted as a whole, so that specific clauses will not be construed to be in conflict with other clauses, unless no other reasonable interpretation is possible. *Hol–Gar Mfg. Corp.,* 169 Ct.Cl. at 395, 351 F.2d at 979. The goal of contract interpretation is to find meaning that will achieve this harmony. It appears that the contract in this case could be read so as reasonably to sustain either party's interpretation of it. This case is similar to the seminal case of *Sun Shipbuilding,* which held that where there are "two reasonable constructions of the contract that lead to different results.... the contract is ambiguous, because it is susceptible of two different interpretations, each of which is found to be consistent with the contract's language." 183 Ct.Cl. at 372, 393 F.2d at 818; *see Bennett v. United States,* 178 Ct.Cl. 61, 64, 371 F.2d 859, 861 (1967). The court in *Sun Shipbuilding* held that "[i]t is the rule that where we have a contract that has been written by the government which is ambiguous, the ambiguity will be resolved against the drafter of the document (the government) and in favor of the other party." *Sun Shipbuilding,* 183 Ct.Cl. at 372, 393 F.2d at 816.

Plaintiff's interpretation of Note A is generally consistent with Clause H–4, but the unreasonableness of its interpretation becomes manifest when the disputed provisions are viewed alongside the regulations. The regulations governing the use of contract and sub-line item numbers explicitly state that when subline items are used, "[a]ll shipments and payments will be made at the subline item level." 48 C.F.R. § 204.7104–2(b)(5). The regulations also prohibit the contract line item/subline item system from being construed in a way that requires "the identification of contractor products ... at the subline item level and contractor payment at the contract line item level." 48 C.F.R. § 204.-7104–2(c)(2). Plaintiff's interpretation ignores these provisions mandating that SLINs be used as the operative contract unit when they are used in a contract. With these provisions in mind, the "all or part" language used in schedule H–4 can only be read to refer to all or part of the operative unit of the contract—a SLIN. Similarly, the "if and to the extent" language in Note A can only be understood to allow the SLIN option to be exercised for quantities less than those stated. Plaintiff's interpretation does exactly what the FAR forbids: It treats the CLIN as the operative unit of the contract and the SLINs as indefeasible subsets of the CLINs.

It was unreasonable for plaintiff to assume that the CLIN was the smallest operative contract unit and was not subject to reduction in the option. If any ambiguity existed in the contract, it was so patent when viewed in light of the regulations as to require plaintiff to inquire as to the meaning of the ambiguous provision. A reasonable contractor should have asked for clarification if there was any doubt whether the quantities listed in the options were absolute.

Plaintiff argues that defendant's interpretation of the contract effectively renders it an "indefinite quantity" contract, requiring the Government to insert a standard "Indefinite Quantity" clause pursuant to FAR § 52.216–22. In addition, plaintiff argues that since FAR 16.504(a)(1) requires all indefinite quantity contracts to designate a minimum purchase amount, and no such amount was designated in the contract, the contract cannot be interpreted as an indefinite quantity contract without violating the FAR. These arguments, however, lack foundation.

Defendant correctly responds that these indefinite quantity contract provisions apply only if the underlying contract is an indefinite quantity contract. The FAR describes an indefinite quantity contract as one that, "provides for an indefinite quantity, within stated limits, of specific supplies or services to be furnished during a fixed period, with deliveries to be scheduled by placing orders with the contractor." 48 C.F.R. § 16.504(a) (1989). In contrast, an option is defined as "a unilateral right in a contract by which, for a specified time, the Government may elect to purchase additional supplies or services called for by the contract, or may elect to extend the term of the contract." 48 C.F.R. § 17.201. Plaintiff's contract provided for definite quantities, with the option to order indefinite quantities. It was not an indefinite quantity contract. The FAR requirement invoked by plaintiff therefore does not apply. Defendant's interpretation does not violate the FAR. To the contrary, this interpretation gives effect to the FAR's explicit mandates.

### CONCLUSION

Therefore, based on the foregoing, defendant's motion to dismiss is granted, and plaintiff's cross-motion for partial summary judgment is denied. The Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**