Rick **VASSAR,** Plaintiff,

v.

**UNITED STATES,** Defendant.

No. 02–946C.

United States Court of Federal Claims.

Dec. 8, 2004.

Q.

ment and Plaintiff's Motion for Partial Summary Judgment, pursuant to R. CT. FED. CL. 56 ("RCFC"). Plaintiff, Rick Vassar ("Vassar") filed suit against the United States, acting through the United States Postal Service ("USPS" or "Postal Service"), for damages arising from a trailer lease contract. Under the contract, Vassar agreed to provide 135 trailers to the Postal Service for use in hauling mail to and from a bulk mail facility located in Detroit, Michigan. With the exception of damage caused by Vassar himself, the contract required the USPS to pay for all loss or damage to the trailers and related equipment beyond normal wear and tear. Vassar has three breach of contract claims against the USPS. Claim I relates to repairs performed on Vassar's trailers during the terms of the contract. Claim II relates to repairs done on additional trailers Vassar leased to the Postal Service during the holiday seasons of 1998 and 2000. Claim III relates to repair estimates on Vassar's trailers at the end of the contract term. Defendant now moves for partial summary judgment with respect to Claim III. Plaintiff opposes defendant's motion, and moves for partial summary judgment with respect to Claims I and II. After careful consideration of both parties' briefs and oral argument, defendant's motion for partial summary judgment on Claim III is DENIED, and plaintiff's motion for partial summary judgment on Claims I and II is GRANTED.

L. William Houger, Houger & Walt, P.S., Seattle, WA, with whom was Sharon Ambrosia-Walt, Houger & Walt, P.S., for plaintiff.

Kenneth D. Woodrow, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director, for defendant.

## *OPINION*

MARGOLIS, Senior Judge.

This case is before the Court on Defendant's Motion for Partial Summary Judg-

## *FACTS*

In 1995, Vassar and the USPS entered into contract number 48399 whereby Vassar agreed to supply the USPS with 135 new tandem axle trailers to be used between October 1995 and June 2001. The 135 trailers were designed specifically to meet the particular requirements of the USPS. Under the terms of the contract, Vassar provided a full service preventive and reactive maintenance program under which all damage repairs were to be made in a manner that maintained the trailers in an "as new condition." Section 4 of the contract, entitled "Liability for Damages," states as follows:

> Except for damage caused by acts or omissions by the contractor or its agents, the

Postal Service will be liable to the contractor for loss or damage, exclusive of fair wear and tear, to equipment of the contractor. Except as provided below, no deduction in compensation will be made for out of service trailers as described in the paragraph. The contractor must report any loss or damage to the administrative official immediately upon learning of such loss or damage.

All damage repairs made to trailers placed in service under this contract will be accomplished in a manner so that the trailers are maintained in an as new condition, exclusive of fair wear and tear. Serviceable repairs will be accomplished for trailers put in service under this contract. The contractor will inspect damage and provide an estimate for repair including the amount of time required to complete the repairs.

The Postal Service will determine whether the contractor or another party will effect the repair. If the contractor is directed to complete the repair, it must accomplish the repair in the time estimated. Failure to do so will result in assessing the contractor an amount equal to the per diem rate plus $25 per day, per trailer for each day the trailer is out of service beyond the estimate (sic) completion date, unless a suitable replacement trailer is placed in service.

Pl.'s Complaint, Appendix at 19. During the contract term, all repairs to the trailers were performed by Vassar or his agents. Damaged trailers were "red tagged" for repair on a daily basis and placed out of service until repaired. Damages not caused by Vassar and not attributable to fair wear and tear were recorded on Postal Form 5201. After plaintiff had performed the necessary repairs he would send Postal Form 5201, an estimate of repair, and Postal Form 95 (a claim form) to the USPS, requesting payment for the repair costs to be paid by the USPS. Plaintiff alleges that while the USPS paid him for some of the repair costs, it failed to pay for many others. Plaintiff claims that by the end of the contract, the USPS had not paid him $93,315.39 for repairs made to his regular trailers, and $13,879.08 for repairs made

to extra trailers leased to the USPS during the Christmas seasons of 1998 and 2000.

At the end of the contract term, plaintiff and defendant jointly inspected each trailer for final damages. Based on the inspection, plaintiff prepared estimates for the cost of repair of the damages to the trailers and submitted them to defendant. Even though defendant acknowledges that the estimates were reasonable, it refused to pay for the repairs. In September 2001, plaintiff met with the Contracting Officer to discuss plaintiff's outstanding damages claim. The USPS informed plaintiff that he would first have to repair the trailers before it would consider his claim and, according to plaintiff, made no assurances that it would in fact pay for the repairs even if they were made. As a result, plaintiff did not repair the trailers and sold 127 of the 135 trailers in their unrepaired state. Plaintiff claims that the damage repair orders total $263,181.41.

Vassar is an employee of L.V.L., Inc., a highway mail transportation contractor owned by Vassar's father. Although Vassar submitted the bid for the contract in his individual capacity, all financial backing for his performance came from L.V.L., Inc. L.V.L. maintained ownership of the trailers throughout the entire contract, and Vassar paid L.V.L. on a monthly basis from the contract proceeds he received from the Postal Service. The proceeds from the sale of the 127 unrepaired trailers went to L.V.L. while the remaining 8 trailers remain under L.V.L.'s ownership.

On August 7, 2002, Vassar filed a complaint with this Court alleging breach of contract on three separate claims. In response, defendant filed a motion for partial summary judgment on the claim relating to the end of the contract damages (Claim III). Plaintiff responded by requesting that the Court deny defendant's motion for partial summary judgment on Claim III and enter partial summary judgment in plaintiff's favor for the damages relating to the repairs effected during the contract term (Claims I and II).

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that affects the outcome of a case. *Id.* at 248, 106 S.Ct. 2505. Issues of contract interpretation are questions of law, which are properly resolved on motions for summary judgment. *Varilease Technology Group, Inc. v. United States,* 289 F.3d 795, 798 (Fed.Cir.2002) (*citing Textron Def. Sys. v. Widnall,* 143 F.3d 1465, 1468 (Fed.Cir. 1998)).

## II.   *Breach of Contract Claim For Damages During Contract Term*

Plaintiff claims that the USPS breached its contract because during the contract term, it failed to pay for $93,315.39 of damage repairs. Further, plaintiff claims that during the Christmas seasons of 1998 and 2000, defendant failed to pay for the damage repairs in the amount of $13,879.08. Plaintiff asserts that there is no genuine issue as to any material fact on these claims because defendant has admitted that the damages are $107,194.47, the sum total of Claims I and II. Defendant made the following admissions: that plaintiff in fact made the repairs; that the repairs were for damages not caused by plaintiff and not caused by fair wear and tear; that the repairs were reasonable; that the cost of each repair was reasonable; that the USPS accepted the repairs after they were made; and that the cost of the repairs made that has not been paid by the USPS is $107,194.47. At oral argument, defendant's counsel stated that he would not defend against Claims I and II. (Trans. at 17, lines 5–6).

Accordingly, the USPS has not raised a genuine issue of material fact with regard to Claims I and II. Plaintiff is entitled to partial summary judgment on both claims for a total of $107,194.47, plus interest.

## III.   *Breach of Contract Claim For Damages at the End of Contract*

Plaintiff alleges that the USPS' refusal to pay the $263,181.41 for trailer damage identified at the time the trailers were returned to Vassar at the end of the contract constitutes a breach of contract. In its motion for partial summary judgment on the claim, defendant argues that its liability under the terms of the contract is limited to payment of the cost of repairs that were *actually performed.* Defendant claims that the plain language of Section 4 of the contract establishes a procedure for repair of the trailers which obligates the contractor to actually perform the required repairs *before* the USPS is obligated to pay for the costs of the repairs. Defendant further claims that Section 4 of the contract does not create liability for diminution in value, nor does it provide for the return or restoration of the trailers in any particular condition. Because Vassar sold the trailers without actually repairing them, defendant argues it is not obligated to pay for the damage.

Defendant attempts to buttress its motion for partial summary judgment with the law of contract interpretation. First, defendant cites *Randallstown Plaza Assoc. v. United States,* where the court explained that in interpreting a contract, the court's "first responsibility is to attempt to interpret the lease in an effort to determine what the parties agreed to in their bargain .... The interpretation of a lease, ... as with any other contract, is a question of law to be decided by the court." 13 Cl.Ct. 703, 706 (1987). Defendant contends that it bargained for the advantage of having trailers that were in an "as new" condition at all times during contract performance. It also claims that it did not bargain to compensate for diminution in value without repair because calculating diminution in value is an extremely speculative enterprise. Further, defendant argues that it bargained for the benefit of certainty that comes with paying for the actual costs of repair, and if Vassar had only performed the repairs after the end of the contract, the costs would have been certain, and therefore reimbursable.

Defendant further argues that the parties' course of dealing supports its interpretation of the contract. *See Universal Match Corp. v. United States,* 161 Ct.Cl. 418 n. 4, 1963 WL 8568 (1963) (stating that "[t]he conduct of the parties under a' contract plays an important role in interpreting it."). Defen-

dant claims that during the term of the contract, the liability section (Section 4) was administered such that *after* Vassar performed the repairs he would send the USPS a bill for the cost of repairs. Defendant argues that the parties followed this specific course of dealing consistently throughout the contract and that such conduct shows that the parties intended the liability provision to be administered in that way only—that is, in a way in which Vassar repaired the trailers *before* submitting a bill to the USPS.

Finally, defendant asserts that its interpretation of Section 4 is consistent with the fundamental purpose of the contract. Defendant claims that the purpose of the contract was to provide new trailers, designed and built specifically to meet the Postal Service's specifications for a six-year lease. Defendant argues that plaintiff's interpretation of the contract turns the parties' bargain on its head. Under plaintiff's interpretation, defendant claims that plaintiff could discover damage to a trailer, yet charge the USPS for the diminution in value to the trailer resulting from the damage rather than actually repair it. Under this scenario, defendant argues, it would not have an "as-new" trailer during the course of the contract, which is contrary to the contract's fundamental purpose.

Plaintiff, on the other hand, urges the Court to look to the plain language of the contract. *See Aleman Food Services, Inc. v. United States*, 994 F.2d 819, 822 (Fed.Cir. 1993) (stating that courts should look to the plain language of the contract to resolve any questions of contract interpretation). The first line of Section 4 states:

> Except for damage caused by acts or omissions by the contractor or its agents, the Postal Service will be liable to the contractor for loss or damage, exclusive of fair wear and tear, to equipment of the contractor.

Plaintiff asserts that this provision holds the USPS liable for all damage to the trailers during the course of the contract with the exception of damage caused by fair wear and tear, and damage caused by the plaintiff or his agents. Plaintiff claims that nothing in the contract indicates that the procedure for repair is intended to preclude USPS from

liability if he, Vassar, does not effect repairs. Plaintiff points out that he was not obligated to make repairs unless requested, and naturally, the USPS had no interest in requesting that he repair the trailers at the end of the contract when the trailers were no longer of use to the USPS.

Plaintiff asserts that the only way to understand the intent of the repair provisions under Section 4 is to look at the preceding provision, "Section 3—Full Service Trailer Maintenance Requirements." Under the section entitled "Reactive Maintenance," Section 3.B.1. states: While trailers are at postal facilities listed in Attachment 8, the contractor will provide trailer repair and tire service, 24-hour per day, 7-days a week for all necessary repairs, other than the damage for which the Postal Service is responsible under Section 4.

Section 3.C. also states that if the contractor fails to provide the required maintenance (for damage other than that for which the USPS is responsible), the USPS has various remedies including assessing a per diem rate plus $25 per day per trailer against the contractor for each trailer that is out of service for more than 24 hours. Plaintiff asserts that Section 3 clearly obligates the contractor to make necessary repairs for damage not caused by the USPS under Section 4.

Plaintiff contrasts Section 3 with Section 4, which covers damages caused by the USPS. Under Section 4, "no deduction in compensation will be made for out of service trailers," and "[t]he Postal Service will determine whether the contractor or another party will effect the repair." Therefore, plaintiff argues that under Section 4, the contractor's only obligation was to report damage upon discovery and provide an estimate for repair. By contrast, under Section 3, plaintiff had an obligation to make repairs, other than those for which the USPS was responsible.

Additionally, plaintiff argues that the USPS' interpretation of Section 4 is illogical. Plaintiff cites to *City of Oxnard v. United States*, 851 F.2d 344, 347 (Fed.Cir.1988) where the court held that contract interpretation constitutes an objective test. Further, under *International Transducer Corporation v. United States*, "reasonableness is the stan-

dard." 30 Fed.Cl. 522, 527 (1994). Plaintiff argues that if repair were a condition precedent to recovery, the USPS could escape liability if it were to cause irreparable damage to the trailers. Alternatively, the USPS would be locked into paying for repairs irrespective of whether the price was reasonable, for example, if the cost of repairs exceeded the value of the leased property. Plaintiff argues that neither of these scenarios are reasonable, and a reasonably prudent contractor would not have interpreted the contract in this way.

This Court is not persuaded by the USPS' interpretation of the contract. In interpreting a contract, we begin with the plain language. " 'We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning.' In addition, '[w]e must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.' " *Jowett, Inc. v. United States,* 234 F.3d 1365, 1368 (Fed.Cir.2000) (citations omitted). Nowhere in the contract does it state that repair is a condition precedent to recovery at the end of the contract. Section 4 of the contract simply states that the USPS will be liable for loss or damage to the trailers other than damage caused by the contractor himself, or by fair wear and tear. With respect to repairs, Section 3 of the contract states that it is Vassar's responsibility to maintain the trailers in an as new condition, which he did throughout the contract term. Furthermore, the contract must be "considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its provisions." *Record Steel and Const., Inc. v. United States,* 62 Fed.Cl. 508, 514 (2004) (*citing NVT Technologies, Inc. v. United States,* 370 F.3d 1153, 1159 (Fed.Cir.2004)). Sections 3 and 4, when read together, indicate that the contractor is obligated to make necessary repairs for damage not caused by the USPS, but when the USPS causes the

damage, an entirely different procedure is invoked—one in which the contractor is only obligated to provide an estimate for repair.[1]

"Where there is a question of construction of a written contract, and it can be determined by consideration of the plain and unambiguous wording of the contract, the question is one of law which can be resolved by the court on a motion for summary judgment." *Badgley v. United States,* 31 Fed.Cl. 508, 511 (1994) (*citing National Rural Utilities Cooperative Finance Corp. v. United States,* 14 Cl.Ct. 130, 136 (1988)). Therefore, as a matter of law, this Court holds that, at the end of the contract, repair was not a condition precedent to recovery under the contract. Pursuant to Section 4 of the contract, if the damage to the trailers caused by the USPS is beyond fair wear and tear, the USPS is liable for those damages. The amount of the damages is a genuine issue of material fact, and plaintiff should be afforded the right to present evidence with respect to the damages.

## IV. *Real Party in Interest*

■ Defendant additionally argues that because plaintiff did not own the trailers for which he is claiming damages, he cannot—as a matter of law—meet the requisite burden of proof to entitle him to recover for those damages. Citing to *Landmark Land Co., Inc. v. Federal Deposit Insurance Corporation,* defendant asserts that plaintiff may only recover restitution damages for the net loss that plaintiff suffered as a result of the breach. 256 F.3d 1365, 1372 (Fed.Cir.2001). Defendant contends that plaintiff is not entitled to recover the costs of repairing the trailers because he has not suffered any loss for selling them at a lower price. Defendant points to the fact that plaintiff did not own the trailers, that the proceeds from the sale went to L.V.L., Inc., and that plaintiff was not contractually liable to L.V.L., Inc. for any losses associated with the trailers.

---

1. Section 4 of the contract provides that the Postal Service will determine whether the contractor will effect the repair. In September 2001, about three months after the contract was completed, the Postal Service told plaintiff to make the repairs, and that it would then "consid-

er" plaintiff's claim. Defendant made no commitment to pay for the repairs, even if plaintiff were to complete them. (Pl.'s Appendix in Response to Defendant's Motion for Partial Sum. J. on Claim III at 43).

Plaintiff claims that what defendant has argued, in essence, is that plaintiff is not the real party in interest for purposes of the contract damages because the trailers were financed and owned by L.V.L. Plaintiff cites to RCFC 17(a) which states that an action must be prosecuted in the name of the "real party in interest." Plaintiff further cites *American Maritime Transport, Inc. v. United States*, a case in which the Court held that even though a third party was to be the beneficiary of the recovery, "the plaintiff [was] the real party in interest under Rule 17(a) because, as signatory to the contract, it possesse[d] the substantive contractual right being enforced." 18 Cl.Ct. 283, 290 (1989). Plaintiff argues that he, like American Maritime, is the signatory to the contract, and only he possesses the contractual right being enforced. Further, plaintiff asserts that the rationale underlying rule 17(a) is to shield the defendant from subsequent suits on the same action and to give the judgment rendered proper *res judicata* effect. *See Kanehl v. United States*, 38 Fed.Cl. 89, 101 (1997). Plaintiff argues that a finding that he is the real party in interest is consonant with the purpose of the rule because as the signatory to the contract, no one else can recover from the Postal Service on this matter. The USPS, therefore, does not face subsequent litigation on the matter, and the suit will have proper *res judicata* effect for the parties.

This Court agrees with plaintiff. The issue before the Court is to determine which party is the real party in interest. *American Maritime* specifically states that a party who possesses the right sought to be enforced is a real party in interest. 18 Cl.Ct. at 290. Furthermore, only a contractor may bring an action under the Contract Disputes Act, 41 U.S.C. § 601–613. The term "contractor" means a party to the government contract other than the government. 41 U.S.C. § 601(4). In the present matter, the real party in interest is plaintiff Rick Vassar, the signatory to the contract. Plaintiff has a right to bring this action.

### CONCLUSION

Accordingly, it is ORDERED that plaintiff's motion for partial summary judgment on Claims I and II is GRANTED, and defendant's motion for partial summary judgment on Claim III is DENIED. As there is no just reason for delay, pursuant to Rule 54(b), the clerk shall enter judgment on Claims I and II in plaintiff's favor in the amount of $107,194.47, plus interest.