Robert MERRICK, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 654–86T.

United States Claims Court.

Nov. 21, 1989.

Eric M. Schmitz, St. Louis, Mo., for plaintiff.

Steven I. Frahm, with whom were George L. Hastings, Jr. and Asst. Atty. Gen., William S. Rose, for defendant.

## OPINION

SMITH, Chief Judge.

Plaintiff, Robert Merrick, brings suit against the Internal Revenue Service (IRS) demanding over $1 million in commissions and $1 million in damages, arguing that the IRS breached a contract it made with him pursuant to Section 7623 of the Internal Revenue Code. This provision allows IRS officials to give monetary rewards for information helpful in discovering unlawful tax practices. Defendant moves for partial summary judgment, arguing that IRS Publication 733 limits the amount of the reward to $50,000 for information about related taxpayers, and that the taxpayers reported by plaintiff were related. This court rules that principles of contract interpretation and analysis of IRS regulations support the IRS's position that the taxpayers involved in the shelter were related. Consequently, plaintiff's reward is limited to $50,000.

## FACTS

In 1982, plaintiff Robert Merrick provided that IRS with approximately 1,585 names of individuals involved in an unlawful tax shelter. The IRS was unsuccessful in its effort to obtain this information on its own. The plaintiff alleges that the IRS recovered over $6,800 from each investor, for a total of over $10 million in taxes. On June 2, 1982, plaintiff filed a claim for a reward based on § 7623 of the Internal Revenue Code of 1954 (IRC). This IRC provision and IRS Publication 733 provided that an informer could recover a certain percentage of the back taxes as a reward, to be calculated by a formula set forth in Publication 733, but limited the recovery to $50,000. Plaintiff alleges that at the time he was preparing his claim to be submitted to the IRS, an IRS agent indicated that the $50,000 limit would apply to each of the 1,585 investors, and was not a limit on the aggregate recovery. According to the plaintiff, the agent instructed him to file one claim and to attach a list of the investors, implying that this method would have

the same effect as filing 1,585 separate claims.

On October 21, 1983, the Acting District Director of the IRS wrote plaintiff that he found the 1,585 investors "related" as defined in 5 Administration, CCH Internal Revenue Service Manual, ¶ 9371.5(6). This determination limited plaintiff's total aggregate recovery to $50,000, rather than $50,000 per investor.

Plaintiff filed a protest with the IRS demanding recovery of amounts in excess of the $50,000 limitation. The IRS denied plaintiff's demand and plaintiff brought suit in the Claims Court. This court issued a bench ruling dismissing plaintiff's complaint for failure to state a claim. *Merrick v. United States*, No. 645–86T (Cl.Ct. June 16, 1987). The United States Court of Appeals for the Federal Circuit reversed and remanded for further proceedings. The appeals court held that an informant's entitlement to a reward from the IRS is a matter of contractual agreement between the parties. *Merrick v. United States*, 846 F.2d 725 (Fed.Cir.1988). In the court's view, plaintiff's allegation that the Acting District Director fixed the amount of the reward by establishing how it was calculated was sufficient to state a contract claim against the United States. This court now considers the case upon remand. Defendant has filed a motion for partial summary judgment seeking an order limiting plaintiff's recovery under the alleged contract to $50,000.

## DISCUSSION

### Rule 56—Summary Judgment

Rule 56 of the Rules of the United States Claims Court (RUSCC) provides that summary judgment

> shall be rendered forthwith if pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, if any, show that there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.

The Supreme Court has stated that the "[s]ummary judgment procedure is proper-

ly regarded not as a disfavored shortcut, but as an integral part of the federal rules as a whole, which are 'designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted).

As stated by this court, a motion for summary judgment requires a two-part inquiry. First, the court must determine whether the moving party has demonstrated that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Second, the court must look to the proof put forward by the non-moving party and determine whether it has presented "specific and credible facts that either tend to establish all the necessary elements of its cause of action or at least are sufficient to raise genuine issues of material fact relative to its cause of action." *McDonald v. United States*, 13 Cl.Ct. 255, 258 (1987) (citing *Celotex*).

In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court stated that the non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. The non-movant must come forward with specific facts showing a genuine issue for trial, facts on which a jury could reasonably find for the non-movant.

In the instant case, defendant has moved for partial summary judgment, claiming that if, for purposes of this motion, a contract existed by which it was obligated to pay plaintiff a reward for information, the amount to which it was obligated was limited to $50,000 as a matter of law. Granting that assumption for purposes of this motion only, and resolving any doubts concerning issues of fact in favor of the plaintiff, *see Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 468 F.2d 922 (1972); *Garcia v. United States*, 108 F.Supp. 608 (Ct.Cl.1952), the court finds that the defendant has discharged its burden and that plaintiff has failed to show facts which warrant a trial.

### Reward System as Contract

Plaintiff contends that the IRS breached the contract it formed with him under IRC § 7623. This section authorizes rewards for information helpful in detecting and prosecuting violations of tax laws. It provides in full:

The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums, not exceeding in the aggregate the sum appropriated therefor, as he may deem necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws, or conniving at the same, in cases where such expenses are not otherwise provided by law.

Pursuant to this Code section, the Secretary issued Treasury Regulation 301.-7623–1 to guide the payment of such awards. The regulation provided, in pertinent part:

(a) *In general.* A district director may approve such reward as he deems suitable for information that leads to the detection and punishment of any person guilty of violating any internal revenue law, or conniving at the same. The rewards provided for by Section 7623 are limited in their aggregate to the sum appropriated therefor and shall be paid only in cases not otherwise provided for by law....

(C) ... No person is authorized under these regulations to make any offer, or promise, or otherwise to bind a district director with respect to the payment of any reward or the amount thereof.

Plaintiff argues that a contract exists, because the Acting District Director fixed the amount of his reward when he promised plaintiff that his reward would be calculated under Publication 733, paragraph (1) of the section entitled, "Amount and Payment of Reward." Plaintiff also argues that the Acting District Director breached this contract because he did not calculate the reward as promised under paragraph (1) of Publication 733. The question before this court is to determine whether Publication 733 sufficiently defines the amount of the reward to which the plaintiff is entitled under the alleged contract.

Publication 733 provides several methods for calculating the award, the most generous of which is found in paragraph (1), and provides as follows:

For specific and responsible information that caused the investigation and resulted in recovery, the reward will be 10 percent of the first $75,000.00 recovered, 5 percent of the next $25,000.00, and 1 percent of any additional recovery.

The publication continues to state that the total reward will not be more than $50,000. *Id.* The other two paragraphs in this sub-section allow smaller percentages. All three formulas for calculation of reward limit recovery to $50,000 per person.

The parties, however, disagree about how this $50,000 limitation should be used in calculating the reward amount. Plaintiff argues that each of the 1,585 names on the list is a separate claim, and thus the limitation should apply to a percentage recovered from each taxpayer. The defendant asserts that plaintiff's total recovery is limited to $50,000 because the taxpayers he exposed were "related taxpayers" as that term is defined under 5 Administration, CCH Internal Revenue Manual, ¶ 9371.5(6).

Since Publication 733 is the basis for plaintiff's contract claim, the court must examine it to determine how a taxpayer should be treated. The question this court must address is whether this publication makes it sufficiently clear that the list of taxpayers is one claim of related taxpayers rather than 1,585 separate claims of unrelated taxpayers. If the court determines the publication is ambiguous, it then must determine whether the ambiguity is patent or latent, which has been held to be a question of law. *See, e.g., William P. Klingensmith, Inc. v. United States*, 205 Ct.Cl. 651, 657, 505 F.2d 1257, 1261 (1974) (per curiam); *Perry & Wallis, Inc. v. United States*, 192 Ct.Cl. 310, 311, 427 F.2d 722, 726 (1970).

The language in a contract may be said to be ambiguous when it is capable of more

than one reasonable interpretation. *Southern Const. Co., Inc. v. United States,* 176 Ct.Cl. 1339, 1361, 364 F.2d 439, 453 (1966). A disagreement among the parties as to the meaning of a term does not necessarily make the term ambiguous. *See, e.g., Dynamics Corp. of America v. United States,* 17 Cl.Ct. 60 (1989) (relying on *Southern Const. Co. v. United States,* 176 Ct.Cl. 1339, 1361, 364 F.2d 439, 453 (1966)). Rather, there must be a reasonable uncertainty of meaning. *See, e.g., ITT Arctic Services, Inc. v. United States,* 207 Cl.Ct. 743, 767, 524 F.2d 680, 692–93 (1975); *Southern Constr., supra. See also Beta Systems v. United States,* 838 F.2d 1179, 1183 (Fed.Cir.1988) (parties' conflicting affidavits evidenced ambiguity in the underlying contract sufficient to deny summary judgment).

The test for determining if the language in a contract is ambiguous is whether reasonable persons would find the contract subject to more than one interpretation. *See John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 456 *aff'd. mem.,* 785 F.2d 325 (1985). It is apparent from a literal reading of Publication 733 that reasonable persons could interpret the $50,000 limitation in more than one manner. Although the language employed is clear and intelligible and suggests but one meaning, the offer of a list of taxpayers rather than one taxpayer (extrinsic facts) creates a necessity for interpretation or choice among two or more possible meanings. The court finds that there is an ambiguity, and that it is a latent one. Consequently, this court must determine if this latent ambiguity can be cured by examining the Internal Revenue Manual. For the reasons discussed below, this court concludes that the Internal Revenue Manual cures this ambiguity.

The Internal Revenue Manual provides that separate claims are to filed if the taxpayers are unrelated, but a single claim is to be filed for information concerning "related taxpayers," as defined therein. 5 Administration, CCH Internal Revenue Manual, ¶ 9371.5(6). Applying this provision, the IRS determined that the taxpayers are related and that plaintiff's claim should be treated as one claim.

Plaintiff asks this court to re-examine the IRS's finding that the taxpayers in the shelter exposed by plaintiff are related. The IRS's determination is a mixed finding of law and fact as described in *Gray v. Powell,* 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301 (1941). Although the determination involves application of legal principles (the statutory definition of "related") to the facts of this case, the standard of review is the same as that for a finding of fact.

There is no dispute, nor can there be any, that the IRS is authorized to promulgate regulations and procedures for effectuating § 7623. Moreover, "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Finally, the agency's interpretation of the statute, rules, and regulations is to be upheld if it is "reasonable." *Id.* at 845, 104 S.Ct. at 2783.

█ As explained below, this court finds that the regulations and provisions of the Internal Revenue Manual are not arbitrary nor capricious, that they are in keeping with the mandate of § 7623, and that the IRS's application of them in this case was reasonable.

Paragraph 9371.5(6) of the Internal Revenue Manual defines "related":

"Related taxpayers," as used in connection with the reward program, has reference to those taxpayers who are in fact jointly involved in a scheme to defraud or evade; those who with knowledge are beneficiaries of the scheme; those who as a group have adopted the same scheme, etc.

The IRS's determination that the investors plaintiff named were related is consistent with the underlying purpose of this definition. The policy underlying ¶ 9371.5(6) is that if an informant provides the IRS with information about multiple taxpayers involved in a common scheme or plan and the IRS collects from these taxpayers, the informant's reward should be based on the total taxes recovered. This,

of course, benefits informants in many cases, but it also means that the percentages applicable under Publication 733 should be applied to the aggregate recovery and further means that the total reward cannot exceed $50,000. In this case, plaintiff provided the IRS with a parcel of information concerning a single tax avoidance scheme—a list of its participants and perhaps other information relating to the scheme. In such a circumstance, it is not unreasonable to consider the investors as related and to limit the informant's reward to $50,000.

The text of ¶ 9371.5(6), quoted above, also supports treating the investors as related. That paragraph provides three non-exclusive examples of related taxpayers. Plaintiff argues that the investors fit within none of these examples. The assumption plaintiff makes that is essential to each of those conclusions is that the investors must know each other or know of each other to be related. He therefore concludes that taxpayers who do not know each other or of each other cannot be jointly involved, even if they in fact participate in the same scheme. Likewise, he concludes that taxpayers who do not know of each other have not as a group adopted the same scheme. Finally, plaintiff contends that the knowledge required as beneficiaries of a scheme is personal knowledge of the other participants.

The IRS determined that whether an activity is "group" or "joint" such that taxpayers are related turns on whether the taxpayers have participated in a common enterprise. If two individuals who do not know each other and who live in different states each avoid taxes by keeping a double set of books for their respective businesses, they are not related, although their actions are parallel. An informant who identifies both those individuals has provided the IRS with two independent parcels of information and would be entitled to rewards up to $50,000 for each parcel. If instead of the wholly separate and independent activities of each of those individuals, they banded together with others to engage in a common tax avoidance scheme, they all would become related. An infor-

mant identifying such investors is providing the IRS with one cohesive parcel of information, and his reward should be limited accordingly. It is the participants'. combination into a common group enterprise that makes their actions joint, not whether they personally know each other or are aware of each other. The investors plaintiff named satisfy that criterion. They each were participants in a single tax avoidance scheme. As investors in the scheme, they certainly were aware that they were not acting alone, that there were other investors as well. Accordingly, the IRS determined they were jointly involved in the scheme and as a group they adopted the same scheme.

The investors also were related because they were persons who "with knowledge" were beneficiaries of the scheme. The purpose of the knowledge requirement plainly is to prevent one who benefits from but knows nothing of a tax avoidance scheme from being considered a related taxpayer, *i.e.*, the innocent beneficiary. The knowledge required of investors therefore relates to the scheme itself, not a personal acquaintance with one's fellow investors. In the instant case, the individuals plaintiff named were not innocent beneficiaries; they each directly invested in the illegal tax scheme.

This court's task is not to second-guess the IRS on its choice of rational courses of action. A reasonable person could conclude that the investors in a common tax shelter were jointly involved. In this context, it is not irrational to believe that investors "jointly involved" means investors in the same shelter.

■ Moreover, this court determines that under the principles of contract interpretation the IRS did not obligate itself to pay more than $50,000. It is defendant's contention that before there can be a contractual obligation to pay in excess of the $50,000 limit, as plaintiff urges here, there must be a meeting of the minds. This means that the plaintiff and the IRS must consider the taxpayers as unrelated. Because the parties attach different interpre-

tations to the term, "related," defendant asserts that there was no meeting of the minds.

The court deems this argument unpersuasive. The record clearly shows that the parties attached different interpretations to the term "related taxpayer." Defendant argues that no contract exists because there is no meeting of the minds on the term "related." This court finds, based on the record, that the parties did not specifically consider the meaning of the term "related" when the alleged contract was formed. Therefore, the question before the court is not one of contract formation, as the defendant suggests (*i.e.*, what the parties discussed at the time of the alleged statement by the IRS official), but whose meaning should prevail. This is a question of contract interpretation and must be analyzed under the principles of contract law.

Guidance is provided by the Restatement (Second) of the Law of Contracts (1981) § 201, which states, in pertinent part:

(2) Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made.... [provided]

(b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.

Defendant specifically points to the October 21, 1983 letter as evidence that plaintiff knew of its different interpretation of "related." It is defendant's contention that if there is a contract at all, the plaintiff is bound by the IRS's interpretation. This court finds that the October 21, 1983 letter indicates that plaintiff had knowledge of defendant's interpretation. It also is apparent from the record that the IRS had no knowledge about plaintiff's interpretation of the term "related" at the time the alleged contract was formed. Therefore, plaintiff is bound by the IRS's interpretation.

## CONCLUSION

Each formula for calculation of the reward provided in Publication 733 limits re-

covery to $50,000 for information regarding related taxpayers. Thus, this court affirms the IRS's interpretation of "related" and the resultant limitation on plaintiff's recovery. For the reasons above, this court grants defendant's motion for partial summary judgment limiting plaintiff's maximum reward to $50,000.

IT IS SO ORDERED.