# United States Court of Appeals for the Federal Circuit

2007-5133

DIAHANN D. CAMBRIDGE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Diahann D. Cambridge, of Flossmoor, Illinois, pro se.

Laurie Snyder, Attorney, Tax Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With her on the brief were Richard T. Morrison, Acting Assistant Attorney General, and Kenneth L. Greene, Attorney.

Appealed from: United States Court of Federal Claims

Senior Judge Bohdan A. Futey

# United States Court of Appeals for the Federal Circuit

2007-5133

DIAHANN D. CAMBRIDGE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 07-CV-142, Senior Judge Bohdan A. Futey.

---

DECIDED: March 5, 2009

---

Before NEWMAN, SCHALL, and LINN, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Dissenting opinion filed by Circuit Judge NEWMAN.

SCHALL, Circuit Judge.

Diahann D. Cambridge filed suit in the United States Court of Federal Claims seeking to recover from the government an amount she alleged was owed to her as a reward because she had acted as an informant by providing information to the Internal Revenue Service ("IRS") concerning violations of the tax laws by a named individual. Ms. Cambridge now appeals the final decision of the Court of Federal Claims granting

the government's motion to dismiss her complaint pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") for failure to state a claim upon which relief could be granted. Cambridge v. United States, No. 07-142T, 2007 WL 1888888 (Fed. Cl. May 29, 2007). We affirm.

BACKGROUND

I.

Pursuant to 26 U.S.C § 7623 (2006), the Secretary of the Treasury, "under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for . . . detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws." The implementing regulation states that a "district or service center director may approve a reward, in a suitable amount, for information that leads to the detection of underpayments of tax" and that "[t]he amount of a reward will represent what the district or service center director deems to be adequate compensation in the particular case." 26 C.F.R. § 301.7623-1(a), (c) (2008). We have stated that "[t]hese authorities give the IRS broad discretion to decide whether to make an award or how much to grant." Merrick v. United States, 846 F.2d 725, 726 (Fed. Cir. 1988). We also have stated that the statute and its implementing regulation "alone do not contractually bind the government." Krug v. United States, 168 F.3d 1307, 1308 (Fed. Cir. 1999). As we pointed out in Merrick, "[t]he United States cannot be contractually bound merely by invoking the cited statute and regulation." 846 F.2d at 726. Rather, "[a]n enforceable contract will arise under these authorities only after the informant and the government negotiate and fix a specific amount as the reward." Id.

II.

In her complaint, Ms. Cambridge alleged that in September of 1989, she divulged information to the IRS that eventually led to the detection of a tax violation committed by her former husband, Mr. David E. Pierce, in his capacity as the owner of Harold's Chicken Shacks. Compl. ¶¶ 2-4; Form 211 Application for Reward for Original Information (attached to complaint). In January of 1991, Ms. Cambridge, under the name Diana D. Pierce, filed a Form 211 with the IRS, seeking a reward in return for furnishing this information. Form 211 Application for Reward for Original Information (attached to complaint). The IRS allowed Ms. Cambridge's claim for a reward, paying her the sum of $1,131 in February of 1997, and the sum of $3,429 in February of 1998. With each of these payments, the IRS informed Ms. Cambridge of "a possibility" that she might receive an additional reward. Letter from Lawrence T. West of the IRS to Diahann D. Cambridge; Letter from Nancy B. Jones of the IRS to Diahann D. Cambridge (attached to complaint). In January of 2007, however, the IRS notified Ms. Cambridge that, after careful review, her claim for reward had been finalized, and as a result, she would not receive any further payments. Letter from IRS to Diahann D. Cambridge, January 8, 2007 (attached to complaint). In response to this notice, Ms. Cambridge filed a complaint in March of 2007 in the Court of Federal Claims, seeking payment of the "balance due" on her claim for reward. Although she did not specify the exact amount sought, she did enclose a copy of IRS Publication 733, which describes

2007-5133                                3

the calculation of the amount and payment of rewards for information provided by individuals to the IRS.[1]

In its Rule 12(b)(6) motion, the government argued that, under the statutory and regulatory authority afforded the IRS, any determination of the amount and payment of a reward to Ms. Cambridge was entirely discretionary and unrestricted by the formulas set forth in IRS Publication 733. Consequently, the government maintained Ms. Cambridge had no enforceable statutory or regulatory right to recover a reward. The government acknowledged that an enforceable contract may arise where the informant and the IRS have affirmatively negotiated and fixed the specific amount of a reward. However, pointing out that Ms. Cambridge had not alleged that the IRS had agreed to pay her an amount calculated under IRS Publication 733, or any other specific amount, in excess of those distributions she had received, the government argued that she had failed to state a claim to a reward in excess of the total amount she had already been paid.

Ms. Cambridge filed a one-page response, in which she referred to two letters she had received from the IRS on July 19, 2005, and June 14, 2006, both informing her that the agency could not divulge personal information about Mr. Pierce's tax account,

---

[1]    IRS Publication 733 provides, in relevant part:

The District Director will determine whether a reward will be paid and its amount. . . . The amount of reward will be determined as follows:

1. For specific and responsible information that caused the investigation and resulted in recovery, the reward will be 10 percent of the first $75,000 recovered, 5 percent of the next $25,000, and 1 percent of any additional recovery. The total reward will not be more than $100,000.

and that "any remaining award" would not be forthcoming "until everything is completed and all amounts paid" in connection with the investigation, and that until then, there was "no balance owed to you."

Addressing the government's motion, the Court of Federal Claims noted our holding in <u>Merrick</u> that 26 U.S.C. § 7623 and 26 C.F.R. § 301.7623-1 allow recovery on a contract theory only. <u>Cambridge</u>, 2007 WL 1888888, at *2. The court stated: "To qualify . . . the complaint must allege that the parties reached an agreement as to payment of a reward and its specific amount. Plaintiff cannot contractually bind the United States merely by invoking the aforesaid statute and regulations." <u>Id.</u> (citations omitted). Turning to Ms. Cambridge's claim, the court determined that the government became "contractually obligated" when it agreed that Ms. Cambridge was eligible to receive payment in connection with a successful prosecution of tax law violations. <u>Id.</u> Continuing, however, the court stated that "this obligation was limited to the two reward amounts it calculated and about which defendant notified plaintiff." <u>Id.</u> The court noted Ms. Cambridge's argument that the IRS owed her an additional award because it collected several sums from Mr. Pierce based upon the information she provided. It also noted her reliance on the July 19, 2005 and the June 14, 2006 letters from the IRS. The court observed, however, that her arguments notwithstanding, Ms. Cambridge still had not specified "any agreement with the IRS or any balance owed." <u>Id.</u> Because the court found that, as far as her claim for an additional award payment was concerned, Ms. Cambridge had failed to point to an agreement with the IRS, it determined that Ms. Cambridge had failed to state a valid claim for relief. It therefore granted the government's motion to dismiss pursuant to RCFC 12(b)(6).

2007-5133                                    5

DISCUSSION

I.

We have jurisdiction over Ms. Cambridge's appeal pursuant to 28 U.S.C. § 1295(a)(3). Whether the Court of Federal Claims properly dismissed Ms. Cambridge's complaint for failure to state a claim upon which relief could be granted is an issue of law which we review de novo. Dehne v. United States, 970 F.2d 890, 892 (Fed. Cir. 1992).

In ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff. Papasan v. Allain, 478 U.S. 265, 283 (1986); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). However, a plaintiff must plead factual allegations that support a facially "plausible" claim to relief in order to avoid dismissal for failure to state a claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).

On appeal, Ms. Cambridge contends that the Court of Federal Claims erred in dismissing her complaint. She argues that she is owed an additional award beyond the payments of $1,131.40 and $3,429.14, which she received. According to Ms. Cambridge, she is entitled to an additional award because the information she provided resulted in the IRS eventually recovering taxes due over and above the taxes upon which the rewards she received were based. Relying upon the formula in IRS Publication 733, Ms. Cambridge contends that she is entitled to an additional award payment in the amount of $6,906.55. The government responds that we should affirm the decision of the Court of Federal Claims. It argues that, insofar as any award beyond

what she already has received is concerned, Ms. Cambridge failed in the Court of Federal Claims to point to circumstances giving rise to a contract enforceable against the IRS. See Merrick, 846 F.2d at 726 ("An enforceable contract will arise under [26 U.S.C. § 7623 and 26 C.F.R. § 301.7623-1(a)] only after the informant and the government negotiate and fix a specific amount as the reward.").

## II.

We see no error in the decision of the Court of Federal Claims. As discussed, in order to assert a valid claim under 26 U.S.C. § 7623 and 26 C.F.R. § 301.7623-1(a), Ms. Cambridge had to allege facts "plausibly" showing, Twombly, 127 S. Ct. at 1974, that the IRS had "negotiate[d] and fix[ed] a specific amount as the reward." See Merrick, 846 F.2d at 726. In this case, as far as her claim for an additional reward was concerned, Ms. Cambridge plainly failed to allege facts plausibly showing the government had "negotiate[d] and fix[ed] a specific amount as the reward." Ms. Cambridge simply alleged that, based upon information she had provided, the IRS had recovered additional taxes from Mr. Pierce. That is not enough, however, because even if correct, the allegation does not suggest the IRS agreed to a fixed additional award. Rather, each time the IRS made a payment to Ms. Cambridge, it informed her only that there was "a possibility" that she might receive an additional award. Ms. Cambridge points to this language to support her contention she was entitled to additional money. However, this statement clearly does not fix a reward amount. Finally, as seen above, neither the IRS's July 19, 2005 letter nor its June 14, 2006 letter—to which Ms. Cambridge pointed in the Court of Federal Claims—support the existence of the required agreement on the part of the government.

Ms. Cambridge's case thus differs from Merrick. In 1982, Mr. Merrick provided the IRS with information about an illegal tax shelter, leading to an IRS recovery of over $10 million. Merrick, 846 F.2d at 725. Thereafter, Mr. Merrick communicated with the Acting District Director for the Los Angeles office of the IRS, and was informed "he would receive a reward," and that the amount of this reward would be determined based on Publication 733. Id. Later, Mr. Merrick received an award from the IRS in an amount less than he was entitled to under Publication 733. Based on the IRS representations and the subsequent partial award to Mr. Merrick, we held Mr. Merrick alleged "facts sufficient to state that the IRS fixed the amount of the award." Id. at 726. As seen, Ms. Cambridge points to no such agreement with the IRS. Although she was provided a copy of Publication 733 by the IRS, this was sent before she filed her reward application, and before the IRS determination of whether she was entitled to a reward, and, if she were entitled, what sum she should receive. Significantly, in Krug, we stated that Publication 733 does not in itself create a contract. Rather, "in Publication 733 . . . the Government invites offers for a reward; the informant makes an offer by his conduct; and the Government accepts the offer by agreeing to pay a specific sum." Krug, 168 F.3d at 1309. In Krug, we affirmed the Court of Federal Claims's grant of summary judgment in favor of the government because, in his claim, Mr. Krug relied solely upon the language of Publication 733. He did not point to an agreement with the IRS.[2] Ms. Cambridge likewise has not alleged such an agreement. By contrast, in Merrick, Mr.

_____

[2] Although we recognize that Krug involved a summary judgment motion, this court has made clear that an enforceable contract "arise[s] when the parties fix the reward amount." Merrick, 846 F.3d at 726. Here, there was no allegation the parties did so. The government paid Ms. Cambridge and told her there was a "possibility" she would receive more money—there was no agreement for a fixed amount.

Merrick alleged the government communicated he was entitled to the full reward under Publication 733, but then failed to pay him that sum. The facts of this case are thus distinguishable from <u>Merrick</u>, and most closely parallel the situation in <u>Krug</u>. The Court of Federal Claims correctly held that Ms. Cambridge failed to allege facts sufficient to entitle her to relief.

CONCLUSION

For the foregoing reasons, the final decision of the Court of Federal Claims dismissing Ms. Cambridge's complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief could be granted is affirmed.

<u>AFFIRMED</u>

# United States Court of Appeals for the Federal Circuit

2007-5133

DIAHANN D. CAMBRIDGE,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in Case No. 07-CV-142, Senior Judge Bohdan A. Futey.

NEWMAN, Circuit Judge, dissenting.

I respectfully dissent. My colleagues state that the ruling in Merrick v. United States, 846 F.2d 725 (Fed. Cir. 1988) controls this case. I agree. However, Merrick requires a result contrary to that reached by the panel majority, for neither Mr. Merrick nor Ms. Cambridge had a written contract with the IRS, and neither Mr. Merrick nor Ms. Cambridge had negotiated the measure of the informant's reward. Rather, Merrick states that "our precedents establish that the subject statute and regulation amount to an indefinite reward offer that an informant may respond to by his conduct," id. at 726 (citing Lagermeier v. United States, 214 Ct. Cl. 758, 760 (1977)), and that "an enforceable contract arises when the parties fix the award amount," id. (citing Restatement (Second) of Contracts §34 comment c (1981)).

Merrick also states, as the panel majority quotes, that "the United States cannot be contractually bound merely by invoking the cited statute and regulation," and that "an enforceable contract will arise under these authorities only after the informant and the government negotiate and fix a specific amount as the reward." 846 F.2d at 726. But Merrick held that these criteria were met and the various above-quoted terms satisfied by an implied-in-fact contract that arose on facts similar to those of Ms. Cambridge. Merrick held that the "subsequent conduct of the parties," where the Acting District Director "fixed the amount of the reward in February 1984 by establishing how the IRS would calculate it," was "sufficient to state a contract claim against the United States," thus rendering improper the dismissal of Merrick's claim under Rule 12(b)(6). Id. Thus the Merrick court held that the United States became obligated when it acknowledged that Mr. Merrick was eligible to receive an informant's payment and the IRS made the payment that Mr. Merrick sought to challenge, and therefore that dismissal under Rule 12(b)(6) was not proper.

This principle applies to Ms. Cambridge's situation. She responded to the "indefinite reward offer," id., by providing information that the IRS used to collect unpaid taxes from the person about whom Ms. Cambridge informed, in the total collected amount of $371,709.12. The IRS acknowledged that Ms. Cambridge was entitled to the reward, and paid her a total of $4,560.54, which is below the minimum reward specified in the statute, the regulation, and Publication 733. Ms. Cambridge states that the IRS refuses to tell her how the reward payment was measured. The government states that she has no entitlement to any reward, that she is not entitled to an explanation, and that

the IRS response is discretionary and unreviewable. Precedent is otherwise, as <u>Merrick</u> illustrates.

The panel majority departs from the statute and its purpose by holding that no reward need be paid to a tax informer absent a prior express agreement with the IRS to pay a reward and specifying the amount of reward or how it will be measured. Maj. op. at 7. Such a judge-made encumbrance on the statute eviscerates its purpose, and in all events does not negate the <u>Merrick</u> holding that upon acknowledgement by the IRS of entitlement to a statutory reward an actionable contract arises and the amount of payment can be challenged. Ms. Cambridge's facts, as set forth in her complaint, place her in this category.

The panel majority concludes that Mr. Merrick, unlike Ms. Cambridge, had a contract because the IRS told Mr. Merrick that he would receive a reward and that it would be calculated in accordance with Publication 733. However, in <u>Merrick</u>, as in the present case, the IRS did not bind itself to a specific amount or method of calculation, despite the representation that the award would be calculated in accordance with Publication 733. This court, finding that the threshold contract requirement had been met, remanded Merrick's case to the Court of Federal Claims to determine the merits of his claim. <u>See</u> <u>Merrick v. United States</u>, 18 Cl. Ct. 718 (1989) (on remand, interpreting Publication 733 and the Revenue Manual to support the IRS's method of calculation of Mr. Merrick's reward).

There is no controlling distinction as to the circumstances or obligations arising in these cases. Ms. Cambridge states that she contacted an IRS Special Agent and

inquired about the reward for information she had not yet provided.[1]  In response, she was sent Publication 733.  This is not substantively different from the situation in Merrick, where Mr. Merrick was told that his reward will be calculated in accordance with Publication 733, and the Federal Circuit concluded that, on acknowledgement by the IRS that a compensable disclosure had been made, an implied-in-fact contract arose.  Thus the Merrick court held that the claim should not have been dismissed under Rule 12(b)(6).

The only issue on this appeal is whether Ms. Cambridge's claim was properly dismissed under Rule 12(b)(6).  It is not before us to decide whether she is entitled to a larger award than she received; the issue is whether she is entitled to judicial attention to her claim.  The rule is clear:  to avoid dismissal of a complaint for failure to state a claim, all that the claimant must do is plead allegations "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  Such allegations, "even if doubtful in fact," id., will be sufficient for the complaint to proceed "even if it appears 'that a recovery is very remote and unlikely.'"  Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

The facts set forth by Ms. Cambridge are not disputed.  See Atlas Corp. v. United States, 895 F.2d 745, 749 (Fed. Cir. 1990) ("each of the well-pled allegations in the complaint is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs").  In brief summary: in response to her inquiry concerning rewards to tax informants, the IRS sent her Publication 733.  She was not

---

[1]     The panel majority's statement that "Ms. Cambridge simply alleged that, based upon information she had provided, the IRS had recovered additional taxes from Mr. Pierce," maj. op. at 7, is incomplete.  Ms. Cambridge alleged that she provided information after inquiring about a reward and being sent Publication 733.

told that an express prior contract with the IRS is required in order to obtain a reward when the disclosure procedures in Publication 733 are followed, and Publication 733 does not state that an express prior contract is needed to invoke the reward range set forth in the publication. She states that the IRS contacted her more than once after she submitted the information, that the IRS asked her for additional information which she provided, but that the IRS never mentioned the need for a written contract or the need to negotiate in advance in order to receive the reward set forth in Publication 733. This silence on the part of the IRS, when there was an obligation to speak, weighs heavily against the government's position that Ms. Cambridge was required to obtain a written agreement and negotiate the amount of the reward, in order to have any entitlement at all.

The governing statute, 26 U.S.C. §7623, authorizes the Secretary of the Treasury to pay awards to tax whistleblowers, sets a formula for payments that vary with the substantiality of the information, and establishes minimum and maximum awards. Relevant provisions include:

26 U.S.C. §7623. Expenses of detection of underpayments and fraud, etc.

    (a)    In general — The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for—

        (1)    detecting underpayments of tax, or

        (2)    detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same,

                        \* \* \*

    (b)    Awards to whistleblowers --

        (1)    In general.--    If the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual, such individual shall, subject to paragraph (2), receive as an award at least 15 percent but not more than 30

percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action. The determination of the amount of such award by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action.

(2) Award in case of less substantial contribution.--

(A) In general.-- In the event the action described in paragraph (1) is one which the Whistleblower Office determines to be based principally on disclosures of specific allegations (other than information provided by the individual described in paragraph (1)). . . the Whistleblower Office may award such sums as it considers appropriate, but in no case more than 10 percent of the collected proceeds **. . .** taking into account the significance of the individual's information and the role of such individual and any legal representative of such individual in contributing to such action.

(B) Nonapplication of paragraph where individual is original source of information.-- Subparagraph (A) shall not apply if the information resulting in the initiation of the action described in paragraph (1) was originally provided by the individual described in paragraph (1).

The Treasury Regulations, 26 C.F.R. §301.7623-1(a),(c), state that the IRS District Director has discretion to set the award, and provide further details as to the amounts and ranges of awards under various circumstances.

The government does not dispute that Ms. Cambridge provided information that resulted in significant recovery by the IRS. The government argues that the amount of any reward is discretionary, and that the statute and regulations and Publication 733 do not bind the government to pay any reward or to use the formula in 26 U.S.C. §7623(b). The government quotes the words of Khan v. United States, 201 F.3d 1375, 1377 (Fed. Cir. 2000), that for a Tucker Act claim it is necessary to "identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive

right to money damages." <u>Khan</u> is not helpful, for the case relates to retirement benefits for physicians employed by the Veterans Administration, where the statute does not specify either salary or retirement benefits. In <u>Khan</u> there was no issue of a reward for whistleblowers, and no contract-based theory of entitlement. The general summary of the Tucker Act in <u>Khan</u> does not resolve the issues of this case.

The panel majority cites <u>Krug v. United States</u>, 168 F.3d 1307 (Fed. Cir. 1999), for its holding that 26 U.S.C. §7623 is not money-mandating. However, the facts in <u>Krug</u> present a critical distinction, for no reward at all had been paid to Mr. Krug, and there was no acknowledgment of his entitlement to a reward. Mr. Krug argued that certain amendments to Publication 733 nonetheless established a payment obligation, but this court held that the IRS did not have to pay anything to Mr. Krug because it had not agreed to do so, and distinguished <u>Merrick</u> on the ground that in <u>Merrick</u> an implied-in-fact contract came into existence by the reward acknowledgement and the payment that was made. In contrast with <u>Krug</u>, both Mr. Merrick and Ms. Cambridge received informant payments from the IRS.

Although Ms. Cambridge, appearing <u>pro</u> <u>se</u>, has not developed the legal theories, she has consistently taken the position that her provision of specific information, after receiving Publication 733, was an acceptance of the IRS offer of a reward. As this court explained in <u>Merrick</u>, "our precedents establish that the subject statute and regulation amount to an indefinite reward offer that an informant may respond to by his conduct." <u>Id.</u> at 726. Applying <u>Merrick</u>, an implied-in-fact contract came into existence at least when a reward payment was made to Ms. Cambridge, for the IRS acknowledged that she had provided information that warranted a reward.

2007-5133                                     7

The government also argues that 26 U.S.C. §7623 and accompanying regulations grant discretion to the agency, and that agency discretionary action is unreviewable. Although in <u>Krug</u> this court stated that "it is an open question whether an agency's denial of a discretionary award is reviewable," 168 F.3d at 1310, this court has recognized that such discretion may arise in a variety of circumstances, and that there is a complex balance between review of discretionary agency action and the requirements of due process. In <u>Samish Indian Nation v. United States</u>, 419 F.3d 1355 (Fed. Cir. 2005) the court discussed discretionary agency actions for the payment of money, and summarized precedent for judicial review as follows:

> Certain discretionary schemes also support claims within the Court of Federal Claims jurisdiction. These include statutes: (1) that provide "clear standards for paying" money to recipients; (2) that state the "precise amounts" that must be paid; or (3) as interpreted, compel payment on satisfaction of certain conditions.

<u>Id</u>. at 1364-65 (citations omitted). On the face of Ms. Cambridge's complaint, all three of the <u>Samish</u> criteria are satisfied, for 26 U.S.C §7623 states (1) clear standards for paying money to informers, (2) in precisely stated maximum and minimum amounts, and (3) as interpreted, requires payment when certain conditions are satisfied. The discretion accorded to the IRS is exercised within the statutory framework, and is reviewable within that framework. The panel majority is mistaken in holding that this agency action is immune from judicial review.

Guided by law and precedent, and with attention to the policy implemented by

this statute, Ms. Cambridge has stated a claim under Rule 12(b)(6).[2]  From my

colleagues' contrary holding, I respectfully dissent.

---

[2]  The position of the government does not provide incentive to potential informants, thus negating the statutory purpose.  I take note of a statutory amendment in 2006 that explicitly negates the need for a contract, 26 U.S.C. §7623(6)(A), but is limited to tax recoveries exceeding two million dollars.  Also, appeal may now be taken as of right to the Tax Court, but this provision by its terms is not retrospective.