NEWMAN, Circuit Judge,
dissenting.
I respectfully dissent. My colleagues state that the ruling in Merrick v. United States, 846 F.2d 725 (Fed.Cir.1988) controls this case. I agree. However, Merrick requires a result contrary to that reached by the panel majority, for neither Mr. Merrick nor Ms. Cambridge had a written contract with the IRS, and neither Mr. Merrick nor Ms. Cambridge had negotiated the measure of the informant’s reward. Rather, Merrick states that “our precedents establish that the subject statute and regulation amount to an indefinite reward offer that an informant may respond to by his conduct,” id. at 726 (citing Lagermeier v. United States, 214 Ct.Cl. 758, 760 (1977)), and that “an enforceable *1337 contract arises when the parties fix the award amount,” id. (citing Restatement (Second) of Contracts § 34 comment c (1981)).
Merrick also states, as the panel majority quotes, that “the United States cannot be contractually bound merely by invoking the cited statute and regulation,” and that “an enforceable contract will arise under these authorities only after the informant and the government negotiate and fix a specific amount as the reward.” 846 F.2d at 726. But Merrick held that these criteria were met and the various above-quoted terms satisfied by an implied-in-fact contract that arose on facts similar to those of Ms. Cambridge. Merrick held that the “subsequent conduct of the parties,” where the Acting District Director “fixed the amount of the reward in February 1984 by establishing how the IRS would calculate it,” was “sufficient to state a contract claim against the United States,” thus rendering improper the dismissal of Merrick’s claim under Rule 12(b)(6). Id. Thus the Merrick court held that the United States became obligated when it acknowledged that Mr. Merrick was eligible to receive an informant’s payment and the IRS made the payment that Mr. Merrick sought to challenge, and therefore that dismissal under Rule 12(b)(6) was not proper.
This principle applies to Ms. Cambridge’s situation. She responded to the “indefinite reward offer,” id., by providing information that the IRS used to collect unpaid taxes from the person about whom Ms. Cambridge informed, in the total collected amount of $871,709.12. The IRS acknowledged that Ms. Cambridge was entitled to the reward, and paid her a total of $4,560.54, which is below the minimum reward specified in the statute, the regulation, and Publication 733. Ms. Cambridge states that the IRS refuses to tell her how the reward payment was measured. The government states that she has no entitlement to any reward, that she is not entitled to an explanation, and that the IRS response is discretionary and unreviewable. Precedent is otherwise, as Merrick illustrates.
The panel majority departs from the statute and its purpose by holding that no reward need be paid to a tax informer absent a prior express agreement with the IRS to pay a reward and specifying the amount of reward or how it will be measured. Maj. op. at 1335. Such a judge-made encumbrance on the statute eviscerates its purpose, and in all events does not negate the Merrick holding that upon acknowl-edgement by the IRS of entitlement to a statutory reward an actionable contract arises and the amount of payment can be challenged. Ms. Cambridge’s facts, as set forth in her complaint, place her in this category.
The panel majority concludes that Mr. Merrick, unlike Ms. Cambridge, had a contract because the IRS told Mr. Merrick that he would receive a reward and that it would be calculated in accordance with Publication 733. However, in Merrick, as in the present case, the IRS did not bind itself to a specific amount or method of calculation, despite the representation that the award would be calculated in accordance with Publication 733. This court, finding that the threshold contract requirement had been met, remanded Merrick’s case to the Court of Federal Claims to determine the merits of his claim. See Merrick v. United States, 18 Cl.Ct. 718 (1989) (on remand, interpreting Publication 733 and the Revenue Manual to support the IRS’s method of calculation of Mr. Merrick’s reward).
*1338 There is no controlling distinction as to the circumstances or obligations arising in these cases. Ms. Cambridge states that she contacted an IRS Special Agent and inquired about the reward for information she had not yet provided.[1] In response, she was sent Publication 733. This is not substantively different from the situation in Merrick, where Mr. Merrick was told that his reward will be calculated in accordance with Publication 733, and the Federal Circuit concluded that, on acknowledgement by the IRS that a compensable disclosure had been made, an implied-in-fact contract arose. Thus the Merrick court held that the claim should not have been dismissed under Rule 12(b)(6).
The only issue on this appeal is whether Ms. Cambridge’s claim was properly dismissed under Rule 12(b)(6). It is not before us to decide whether she is entitled to a larger award than she received; the issue is whether she is entitled to judicial attention to her claim. The rule is clear: to avoid dismissal of a complaint for failure to state a claim, all that the claimant must do is plead allegations “to raise a right to relief above the speculative level.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Such allegations, “even if doubtful in fact,” id., will be sufficient for the complaint to proceed “even if it appears ‘that a recovery is very remote and unlikely.’ ” Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).
The facts set forth by Ms. Cambridge are not disputed. See Atlas Corp. v. United States, 895 F.2d 745, 749 (Fed.Cir.1990) (“each of the well-pled allegations in the complaint is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs”). In brief summary: in response to her inquiry concerning rewards to tax informants, the IRS sent her Publication 733. She was not told that an express prior contract with the IRS is required in order to obtain a reward when the disclosure procedures in Publication 733 are followed, and Publication 733 does not state that an express prior contract is needed to invoke the reward range set forth in the publication. She states that the IRS contacted her more than once after she submitted the information, that the IRS asked her for additional information which she provided, but that the IRS never mentioned the need for a written contract or the need to negotiate in advance in order to receive the reward set forth in Publication 733. This silence on the part of the IRS, when there was an obligation to speak, weighs heavily against the government’s position that Ms. Cambridge was required to obtain a written agreement and negotiate the amount of the reward, in order to have any entitlement at all.
The governing statute, 26 U.S.C. § 7623, authorizes the Secretary of the Treasury to pay awards to tax whistleblowers, sets a formula for payments that vary with the substantiality of the information, and establishes minimum and maximum awards. Relevant provisions include:
26 U.S.C. § 7623. Expenses of detection of underpayments and fraud, etc.
(a) In general — The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums as he deems necessary for—
*1339 (1) detecting underpayments of tax, or
(2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same,
* * *
(b) Awards to whistleblowers—
(1) In general. — If the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary’s attention by an individual, such individual shall, subject to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action. The determination of the amount of such award by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action.
(2) Award in case of less substantial contribution.—
(A) In general. — In the event the action described in paragraph (1) is one which the Whistleblower Office determines to be based principally on disclosures of specific allegations (other than information provided by the individual described in paragraph (1)) ... the Whistleblower Office may award such sums as it considers appropriate, but in no case more than 10 percent of the collected proceeds ... taking into account the significance of the individual’s information and the role of such individual and any legal representative of such individual in contributing to such action.
(B) Nonapplication of paragraph where individual is original source of information. — Subparagraph (A) shall not apply if the information resulting in the initiation of the action described in paragraph (1) was originally provided by the individual described in paragraph (1).
The Treasury Regulations, 26 C.F.R. § 301.7623-1(a),(c), state that the IRS District Director has discretion to set the award, and provide further details as to the amounts and ranges of awards under various circumstances.
The government does not dispute that Ms. Cambridge provided information that resulted in significant recovery by the IRS. The government argues that the amount of any reward is discretionary, and that the statute and regulations and Publication 733 do not bind the government to pay any reward or to use the formula in 26 U.S.C. § 7623(b). The government quotes the words of Khan v. United States, 201 F.3d 1375, 1377 (Fed.Cir.2000), that for a Tucker Act claim it is necessary to “identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages.” Khan is not helpful, for the case relates to retirement benefits for physicians employed by the Veterans Administration, where the statute does not specify either salary or retirement benefits. In Khan there was no issue of a reward for whistleblowers, and no contract-based the *1340 ory of entitlement. The general summary of the Tucker Act in Khan does not resolve the issues of this case.
The panel majority cites Krug v. United States, 168 F.3d 1307 (Fed.Cir.1999), for its holding that 26 U.S.C. § 7623 is not money-mandating. However, the facts in Krug present a critical distinction, for no reward at all had been paid to Mr. Krug, and there was no acknowledgment of his entitlement to a reward. Mr. Krug argued that certain amendments to Publication 733 nonetheless established a payment obligation, but this court held that the IRS did not have to pay anything to Mr. Krug because it had not agreed to do so, and distinguished Merrick on the ground that in Merrick an implied-in-fact contract came into existence by the reward acknowledgement and the payment that was made. In contrast with Krug, both Mr. Merrick and Ms. Cambridge received informant payments from the IRS.
Although Ms. Cambridge, appearing pro se, has not developed the legal theories, she has consistently taken the position that her provision of specific information, after receiving Publication 733, was an acceptance of the IRS offer of a reward. As this court explained in Merrick, “our precedents establish that the subject statute and regulation amount to an indefinite reward offer that an informant may respond to by his conduct.” Id. at 726. Applying Merrick, an implied-in-fact contract came into existence at least when a reward payment was made to Ms. Cambridge, for the IRS acknowledged that she had provided information that warranted a reward.
The government also argues that 26 U.S.C. § 7623 and accompanying regulations grant discretion to the agency, and that agency discretionary action is unre-viewable. Although in Krug this court stated that “it is an open question whether an agency’s denial of a discretionary award is reviewable,” 168 F.3d at 1310, this court has recognized that such discretion may arise in a variety of circumstances, and that there is a complex balance between review of discretionary agency action and the requirements of due process. In Samish Indian Nation v. United States, 419 F.3d 1355 (Fed.Cir.2005) the court discussed discretionary agency actions for the payment of money, and summarized precedent for judicial review as follows:
Certain discretionary schemes also support claims within the Court of Federal Claims jurisdiction. These include statutes: (1) that provide “clear standards for paying” money to recipients; (2) that state the “precise amounts” that must be paid; or (3) as interpreted, compel payment on satisfaction of certain conditions.
Id. at 1364-65 (citations omitted). On the face of Ms. Cambridge’s complaint, all three of the Samish criteria are satisfied, for 26 U.S.C § 7623 states (1) clear standards for paying money to informers, (2) in precisely stated maximum and minimum amounts, and (3) as interpreted, requires payment when certain conditions are satisfied. The discretion accorded to the IRS is exercised within the statutory framework, and is reviewable within that framework. The panel majority is mistaken in holding that this agency action is immune from judicial review.
Guided by law and precedent, and with attention to the policy implemented by this statute, Ms. Cambridge has stated a claim under Rule 12(b)(6).[2] From my col *1341 leagues’ contrary holding, I respectfully dissent.

. The panel majority’s statement that "Ms. Cambridge simply alleged that, based upon information she had provided, the IRS had recovered additional taxes from Mr. Pierce,” maj. op. at 1335, is incomplete. Ms. Cambridge alleged that she provided information after inquiring about a reward and being sent Publication 733.

. The position of the government does not provide incentive to potential informants, *1341 thus negating the statutory purpose. I take note of a statutory amendment in 2006 that explicitly negates the need for a contract, 26 U.S.C. § 7623(6)(A), but is limited to tax recoveries exceeding two million dollars., Also, appeal may now be taken as of right to the Tax Court, but this provision by its terms is not retrospective.